# Wheeling.

## BARTHOLOMAE & CO. *v.* PAULL.

Decided November 26, 1881.

1. Where one merchant sends goods to another and at the same time sends invoices of such goods, and the goods and invoices are received by the merchant, to whom they are sent, whether he ordered the goods or not, in law he will be regarded as purchaser, unless within a reasonable time he returns the goods or notifies the sender, that he will not accept them.

2. What is a reasonable time, is a question of fact for the jury to determine under the circumstances of the case.

3. Where goods have been received by a merchant though not ordered by him, he will in law be regarded as the purchaser, if he exercises acts of ownership over them or treats them in a way inconsistent with a recognition of another ownership.

4. Where one merchant sends goods to another, and he disclaiming to have purchased them permits a third person to take them and use a portion of them, although he may afterwards recover the residue of such goods from the third person and return them to the sender, these are such acts of ownership, as will make him liable as the purchaser of the goods.

Writ of error and *supersedeas* to a judgment of the municipal court of Wheeling rendered on the 25th day of March, 1881, in an action in said court then pending, wherein H. Bartholomae & Co. were plaintiffs, and A. W. Paull was defendant, allowed upon the petition of said plaintiffs.

Hon. G. L. Cranmer, judge of the municipal court of Wheeling, rendered the judgment complained of.

PATTON, JUDGE, furnishes the following statement of the case :

H. Bartholomae & Co. brought an action of *assumpsit* in the municipal court of Wheeling against A. W. Paull for goods sold and delivered. The plaintiffs were manufacturers of wall-paper in New York; and the defendant was engaged in the wall-paper-business in Wheeling. There was a verdict and judgment for the defendant; and the plaintiffs obtained a writ of error and *supersedeas* to this Court. The bill of particulars in this case was an account for paper sold and delivered at eight different times from September 10, 1879, to January 29, 1880. The account amounted to $478.70. Paull admitting his liability for $155.50 of said amount deposited that amount with the clerk of the court and pleaded *non-assumpsit* as to the balance, claiming that he had never bought the balance of the goods and was not liable for them. Pratt, one of the employes of the plaintiff, was in Wheeling early in September, and testifies, that he sold a bill of goods to Paull; that Paull stated he would be in New York soon and order additional goods; that subsequently and shortly afterwards he was in New York, came to the place of business of the plaintiff, and purchased some goods, but stated he was in a hurry and requested Pratt to select an additional quantity of goods, as he had confidence in his taste and judgment; that he wanted about $300.00 worth; that he did select that amount in goods, and they were shipped to Paull in Wheeling, as they were manufactured, and invoices were sent to Paull, as the goods were shipped.

Paull testified, that he ordered no goods from the plaintiffs except the goods shipped on the 30th of September and the 10th of October, 1879; that when Pratt was in Wheeling, he declined to order any goods except some, that by sample Pratt had sold for him to a customer in Wheeling; that shortly afterwards he was in New York, and went to the plaintiffs' place of business, saw Pratt there, selected some goods, which are covered by the shipments of September 30th and October 10th; that Pratt wanted him to buy more goods, but he declined, because he expected to go out of the business; that he was in no hurry, dined with Pratt that day, and went through the plaintiffs' manufactory, examined the machinery and samples of paper; that he stated to Pratt, if he did not go out of the business, he would let him select for

him two or three hundred dollars' worth of goods, but he refused at that time to give any order for the goods; that he bought none of the goods in the bill of particulars specified after October 10, 1879; that he was not about his store much in the fall of 1879; that he came to the store one day and found that a package of wall-paper from the plaintiffs had been received at the store and had been opened; these were the goods in the bill of particulars as of the 18th of October; that he stated to Butler, one of his employes, that he had not bought these goods, that he must pack them up and set them away, which was done; that a few days before Christmas he sold out to a Mr. Orr, who took possession; that he was not in possession when the last two shipments were made; that the goods shipped between October 10th and December 22d were in the store, when Orr took possession; that Orr was looking at the stock of goods, and came to these goods, which were set aside together, he stated the goods were not his, that they belonged to the plaintiffs, and if Orr took them, he must deal with them for the goods; Orr moved the stock of goods to another store together with the goods in controversy; that in May, 1880, he got the goods and shipped them back to the plaintiffs; that he never had a bill of all the goods; that he wrote for bills of the rest, but they would only send him statements; that he wrote for the bills in April; that he had some of the bills, he did not know for which of the shipments he had bills; that the bills or invoices he had were received about the time the goods, of which they were the bills, were received; that they were itemized; that he paid the freight on part of the shipments, and perhaps on all but did not remember; that Orr assisted him to pack the goods; that while packing the goods Orr saw some, that he wanted, and took them out of the box and set them aside, the rest of the goods were returned.

Butler and Orr testified to Paull's statement to them about the goods. The defendant offered to read to the jury a letter from Pratt, and the plaintiffs objected; but the court overruled the objection as to a part of the letter, which was read to the jury. The whole letter is not made part of the record, but only that portion of it, which was read to the jury, which under date of August 17, 1880, is as follows: " And most sin-

cerely hope you will be satisfied on account of our intimacy
and friendship.  I should be sorry, that it should lead to any
unpleasantness and I ask you as a friend to consider the mat-
ter seriously in that light.  Now please let me know at once.
Write me at New York, 124 West Thirty-third street.  Lest
you should not get my letter, I wrote a duplicate to Chicago,
care Spencer, Heffer & Co.

                    " Yours,                    " R. H. PRATT."

The clerk of the plaintiffs in New York testified to sending
itemized invoices of each bill of goods, as they were shipped.
No communication of any kind was sent to the plaintiffs, from
the time the goods were received by the defendant to the time
they were returned to the plaintiffs in May, notifying them
that he had not ordered the goods and would not have them,
or making any objection whatever to the goods.

The plaintiffs objected to Paull's statement to Butler & Orr
being given in evidence ; but the court overruled the objec-
tion and allowed the evidence to go to the jury.

The plaintiffs asked for a number of instructions to be
given to the jury, which the court refused to give, and gave
five instructions at the instance of the defendant, to which
action of the court the plaintiffs excepted.  The instructions
asked for by the plaintiff are as follows :

"The defendant, although he may not have ordered the
goods in controversy, yet the receipt of the goods themselves
would make him responsible to the plaintiffs for any loss that
might occur by reason of the appropriation of any or all of
the goods by the defendant himself or his employes, or any
other person into whose hands he might have placed them
without the plaintiffs' consent or subsequent approval.

"2d.  The jury are instructed, that if they believe from the
evidence, that the defendant received invoices of the goods in
controversy, purporting a sale of the goods by the plaintiffs
to him, that the goods themselves were received by him and
the freight paid on the same by him, and that he without
plaintiff's knowledge or consent turned the goods over to Mr.
Orr, either with or without an understanding between him
and the defendant, that he, Orr, was to treat with the plain-
tiffs for the goods, that Mr. Orr took charge of the goods,
offered and showed them for sale, sold some or retained some

in his own store from each of the bills of goods in contro-
versy with the defendant's knowledge and consent, that the
defendant took the residue of the goods in controversy from
Mr. Orr's custody, and shipped them back to the plaintiffs,
then that the goods were in Mr. Orr's hands as the agent of
the defendant; that Mr. Orr's acts in regard thereto are to be
regarded as the acts of the defendant, and are as binding on
him as though done by himself, and amount to an acceptance of
said goods by the defendant, and render him liable to the
plaintiffs therefor.

"3d. The jury are instructed that if they believe from the
evidence, that invoices or bills of particulars expressing that
the defendant bought of the plaintiffs the goods in contro-
versy, and that they had been or were about to be shipped to
him as freight by railroad, were mailed by the plaintiffs to
the defendant, and were received by him, and that the
the goods whose sale and arrival as indicated by such invoices
were received in due time by the defendant from the railroad,
then that these are circumstances tending to show a sale of the
goods thus received, and would render the defendant liable to
the plaintiffs therefor unless he within a reasonable time re-
turns the goods to the plaintiffs or gives them notice that he
does not accept them.

"4th. That if within sixty days from their receipt the
goods were not returned by the defendant to the plaintiffs or
notice given within like time that he does not accept them,
then that such return or notice was not within a reasonable
time.

" 5th. The jury are further instructed, that if they believe
from the evidence, that the defendant gave an order to the
plaintiffs for a lot of goods, the kind and value of which was
not agreed upon in terms, but the value was to be about
$300.00, that discretion was given to the plaintiffs, or their
employe, Pratt, to select the goods for such an order, or any
part of them, that the goods were to be shipped by the plain-
tiffs to defendant as manufactured, that they were shipped at
different times as manufactured and shown in the bills of
particulars in this case, and invoices or bills of particulars of
each shipment expressing that the defendant bought the
goods of the plaintiffs, and the manner of their shipment to the

defendant, were sent by mail so as to reach the defendant in time to give notice to him of the kind, quantity and value of the goods about to arrive, that such invoices were received, that the goods arrived and were delivered to the defendant as stated in said invoices, that the defendant paid the freight on said several bills of goods, then that he is liable to the plaintiffs for all of said goods, though in excess of the amount of $300.00, unless within a reasonable time he returned or offered to return or gave notice that he would not accept the goods received because in excess of the quantity ordered.

"6th. The jury are instructed, that if they believe from the evidence defendant received invoices of the goods in controversy, purporting that the defendant bought the goods of the plaintiffs, and also received the goods specified in the invoices, and did not return the goods within a reasonable time, or notify the plaintiffs within like time that he would not accept the goods, then that the jury can consider these circumstances as tending to show a sale and as corroborative of the witness' (Pratt's) testimony, that he sold the goods in controversy to the defendant.

"7th. The jury can also consider the fact of the defendant's sending back goods he admits he bought along with goods he denies he bought as tending to showing a sale, and also tending to show an acceptance of the goods.

"8th. The jury are also instructed, that the defendant had no right to put the goods in controversy into the hands of any third party upon any kind of an agreement whereby such third party might appropriate the goods to his own use without first having obtained the plaintiffs' consent thereto.

"9th. If the jury believe from the evidence, that it was customary for wall-paper-dealers to order in the fall and winter goods for the succeeding spring's use, and for the manufacturers to fill for their own convenience such orders during the fall and winter, but to date the bills therefor on the 1st of March, and the defendant received the goods in controversy with bills of particulars purporting that the defendant had purchased the same before the 1st of March, that he would be held to have accepted the same unless he returned the goods or gave notice that he would not accept the same before the 1st of March, or within a reasonable time thereafter."

"10th. The jury are also instructed that if they believe from the evidence, that the defendant, after receiving the goods in controversy with bill for some of the shipments, wrote the plaintiffs for bills of the others without notifying them that he would not receive the goods or· was going to return them, then that these are circumstances tending to show a sale and acceptance of the goods, and will warrant the jury in finding for the plaintiffs for the goods in controversy."

The instructions given at the instance of the defendant are as follows:

1st. If the defendant did not authorize the witness, Pratt, to select and send to him the goods named in the bill of particulars dated after October 10, 1879, and the defendant did not accept them as his goods,· then in that case the plaintiffs are not entitled to recover.

"2d. If the defendant did not order the goods in controversy, then it was not the duty of the defendant to return them ; and if the jury believe further, that said defendant did not accept said goods as his own, then they must find for the defendant.

"3d. Under the evidence in this cause, the act of J. C. Orr in taking, keeping and selling a part of the said goods does not, as a matter of law, make him the agent of the defendant as to these goods, notwithstanding the defendant re-shipped the goods to them. The mere fact of the defendant sending back to the plaintiffs such of the goods as Mr. Orr did not keep, does not make him liable for the acts of Mr. Orr to the plaintiffs.

"4th. If the defendant did not order the goods in controversy, and further believe that neither he nor his clerks, before January 1, 1880, sold or offered for sale any part of said goods, then the jury must find for the defendant.

"5th. If the jury believe from the evidence, that the defendant refused to and did not accept the goods, notwithstanding they might believe that the defendant ordered them, the plaintiffs cannot recover the value of the goods in this action, and can only have his action for the damages sustained."

*T. J. Hugus*, for plaintiffs in error cited the following authorities: Best on Ev. § 519 ; 2 Whart. Ev. (2d ed.) §§ 1100,

1101, 1102; 37 Vt, 619; .125 Mass. 451; 36 N. H. 353; 20 Vt. 627; 7 Jones L. 579; 37 Mich. 253; 59 N. Y. 288; 29 Conn. 409; Abb. Tr. Ev. 289; 2 Whart. Ev. (2d ed.) § !141; 54 Barb. 88; 2 Jur. 1043; 5 Wend. 254; 1 Chit. Pl. (16th Am. ed.) 356; 2 Saund. Pl. & Ev. (5th Am. ed.) part 1, pp. 86, 91, 93; Benj. on Sales §§ 168 (o), 699 (a), 679 (n); 100 Mass. 523; 62 N. Y. 272; 6 Bush 463; 18 Gratt. 785.

*R. G. Barr*, for defendant in error, cited the following authorities: 6 W. Va. 127; 11 W. Va, 14; 1 Greenl. Ev. § 108; 36 Ind. 280; 1 Wall. 364; 8 W. Va. 741; 2 Best Ev. §§ 519, 520; *Ward* v. *Ward*, 37 Mich.; *Banfield* v. *Parker*, 36 N. H.; *Elkins* v. *Hamilton*, 20 Vt.; *Worden* v. *Powers*, 37 Vt.; *Whitney* v. *Haughton*, 125 Mass.; *Corder* v. *Talbott*, 14 W. Va.; *Patton* v. *Elk River Co.*, 14 W. Va.; Proff. Jur. Trial §§ 319, 320; Benj. Sales §§ 109, 335, 758.

PATTON, JUDGE, announced the opinion of the Court:

The only question in this case is: Did the plaintiffs in error sell and deliver to the defendant in error the goods mentioned in the bill of particulars? Pratt testifies, that Paull ordered him to select the goods and send them to him; this Paull denies. It was for the jury to determine whom to believe. If Paull ordered the goods, and they were shipped to and received by him, he was bound to accept them, if in quantity and quality they corresponded with the order. It required a distinct act of acceptance on the part of the buyer to complete the sale; the moment the contract was made, and the goods were shipped, the contract was executed, the buyer was entitled to the goods, and the seller to the price. 3 Parsons on Contracts 39; Benj. on Sales §§ 360, 362. This was at common law. But by the 17th section of the Statute of Frauds 29 Charles II in addition to the contract of sale and the delivery of the goods there must have been a distinct act of compliance on the part of the buyer to enable the seller to recover the price of the goods. Parsons on Contracts 40; Benj. on Sales §§ 130, 140. This section of the Statute of Frauds has never been adopted in our State. So that sale of goods, wares and merchandize, which includes the sale of all personal chattels, remains as at common law.

To constitute a sale of personal property, there must be a mutual agreement on the part of the vendor to sell and of the vendee to buy. This agreement may be established in various ways. It need not be express. It may be implied from their language, from their conduct, or may be signified by a nod or a gesture, or may be inferred in some cases by silence. Benj. on Sales § 38. A sale will be implied, where a person receives goods sent to him and deals with them as his own, or does such acts towards them, as would be inconsistent with the ownership of another, as where he offers them for sale, (Benj. on Sales § 703) or changes their condition (*Id.* § 161), or where he does not in a reasonable time repel the implication by returning the goods, or notifying the vendor, that he does not accept them and will not become the buyer (*Id.* § 703 ; *Downs* v. *March,* 29 Conn. 409 ; *Sherman* v. *Sherman,* 2 Vern. 276; *Treadwell* v. *Reynolds,* 39 Conn. 31 ; *Milner* v. *Tucker,* 1 Car. & P. 15 ; *Willis* v. *Jernegan,* 2 Atk. 251; *Percival* v. *Blake,* 2 Car. & P. 514; *Corning* v. *Colt,* 5 Wend. 253.)

What is a reasonable time is a question of fact, to be determined by the jury according to the circumstances of each case. In the case of *Milner* v. *Tucker,* where the article was not returned for six months, the defendant was held liable. The court said : "When the defendant received the chandelier and found it incomplete and inadequate to the room, he should have given the plaintiff notice immediately, and have returned it as soon as he could." In the case of *Percival* v. *Blake,* the defendant was held liable, where he retained the article for two months without making objection. In the case of *Sherman* v. *Sherman,* it was held : "Among merchants, if an account current be sent from one to another, who receives it and makes no objection for two or three posts, this is looked upon as an allowance of the amount." It was held in the case of *Downs* v. *March,* that the defendant gave no notice to the plaintiff of his refusal to accept the pumps and made no reply to the plaintiff's letter stating they had been sent, and was therefore liable. The court said : "If it had been proved by direct evidence, that the goods actually came to the defendant's use, that would have been conclusive proof of a waiver of all objections. The defendant's silence upon the receipt of the plain-

tiff's letter and bill of parcels was evidence of another kind·
indeed but equally satisfactory, if not absolutely conclusive."

In the case of *Treadwell* v. *Reynolds*, notice was not given
for six or eight weeks of a refusal to accept the goods. In the
opinion the court says: "It is to be observed, that the de-
fendant made no objection to the quantity or quality of the
wool, and therefore no time was required for examination;
but his refusal to accept was solely for the reason, that it was
not purchased and delivered within the time authorized nor
till after he had closed the business for the season. It was
his duty therefore to give notice immediately. Had he known
the name and residence of the plaintiff in the absence of any
and special circumstances requiring or justifying the delay, it
would not be unreasonable to require him to write as early as
the day after the wool was received. A .delay of three days
unexplained would have been unreasonable."

Upon the authorities it is plain, that it is the clear duty of
one merchant, who receives goods from another with a bill
showing they are sent as a sale, to notify the sender, that he
will not receive the goods or become liable for them, unless
they are detained for the purpose of examining the quantity
and quality, which must be done in a reasonable time accord-
ing to the circumstances of the case.

I think the statements made by Paull to Butler & Orr as
to the goods in this case were competent as part of the *res
gestœ*. But those statements cannot alter the character of the
acts, which accompanied them. If Paull after his statement
to Butler had notified the plaintiffs in a reasonable time, that
he would not take the goods, it would have been a circum-
stance corroborative of his denial of the alleged contract of pur-
chase in New York. So his statement to Orr, that the goods
were not his, would have shown his understanding of the con-
versation with Pratt in New York; but neither the statement
to Butler nor to Orr can alter the question, whether the law
does not raise by implication a liability because of the delay
in notifying the plaintiffs in error, that he would not take the
goods, and in exercising such control over them as was incon-
sistent with the ownership in another. He permitted Orr to
remove the goods, and subsequently, when he packed the goods
to return them, he permitted Orr to appropriate a portion of

them to his own use.  He was not the plaintiffs' agent; he was their vendee or the custodian merely of the goods, and as such he had no power to allow another to appropriate them. If he did, it was the exercise of such act of ownership, as made him liable as purchaser.  Suppose he had allowed an insolvent man to take the whole of these goods, could he escape liability on the ground, that he was not the purchaser, but the insolvent was?  I think clearly not.  It was a dealing with these goods in a way, which was inconsistent with any body else's ownership.

Applying the foregoing principles to the instructions in this case it will be seen, that the court erred in refusing to give the second, third, fifth, sixth, eighth, ninth and tenth instructions asked for by the plaintiff in error.  Some of those instructions were not accurately drawn, but they sufficiently set forth the law to make it the duty of the court to give them as they were presented, or to modify them.  The first instruction is not applicable to the nature of the action, though its purpose doubtless was to cover the principle expressed in the second instruction.  The fourth instruction is wrong, because what is a reasonable time is a question for the jury and not for the court in an instruction.  The seventh instruction was also wrong, because it merely contains an argument and not a principle of law, but an inference of fact.  The court therefore properly refused to give these instructions.

The second, third and fourth instructions given at the instance of the defendant were improperly given, because they were calculated to mislead the jury.  The fifth instruction was erroneous, because not applicable to a common law sale of goods, but only to a sale under the statute of frauds, which is not in force with us.  As to the reading of the extract from Pratt's letter, the rest of the letter is not before this Court, and therefore it does not appear why it was not read; but the extract in itself is not inadmissible evidence.

I am of opinion to reverse the judgment of the court below with costs, and to remand the case for a new trial to be had therein according to the principles settled in this opinion and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.  CASE REMANDED.