## SELDON S. BROWN v. FRANK J. NELSON.

JANUARY TERM, 1894.

*Affirmance of sale by receipt of property.*

Plaintiff and defendant, residents of Vermont, had negotiated for the sale of a car-load of potatoes, to be shipped by the plaintiff to a party in Boston on account of the defendant. Plaintiff shipped the potatoes upon the understanding that the sale had been perfected, and notified the defendant, who denied that he had bought the potatoes, but afterwards, without further communication with the plaintiff, instructed the Boston consignee to do the best he could with them and remit to the plaintiff. *Held*, that the defendant thereby affirmed the sale.

Assumpsit. Plea, the general issue. Heard at the September term, 1892, Rutland county, ROWELL, J., presiding, upon the report of a referee. Judgment for the plaintiff. The defendant excepts.

The plaintiff claimed to recover for a carload of potatoes containing 502 bushels, at 31½ cents, and the question was whether there had been a sale to defendant.

The parties lived in Pawlet, and both carried on, to some extent, the business of buying and shipping potatoes, by the carload, to market.

In September, 1891, the plaintiff was so engaged in buying and shipping potatoes from West Pawlet to New York City.

. On the evening of September 8th, 1891, the defendant, who had not, up to that time, that season, bought or shipped any potatoes, asked the plaintiff if he would sell him a carload of potatoes to send to Boston, to the firm of Nelson & Clark, commission merchants. The plaintiff informed the

defendant that he then had two cars loaded with potatoes at the railroad station in West Pawlet, and would let the defendant have one of them, or would buy one for him of a Mr. Gould, who had some cars loaded with potatoes at the station at that time. The price was fixed at 31½ cents per bushel, and the defendant told the plaintiff that he would take a car-load, and the plaintiff agreed to ship the same next day, on the morning train, to said Nelson & Clark, and the defendant agreed to give him a check in payment the next time he saw him.

The defendant made no examination and never saw any of the potatoes, a car of which was to be sent on said morning train.

The plaintiff did not forward the car on the train next morning, as he said he would do, but shipped both his cars, then loaded, to New York, and having another car of his own half loaded, he finished loading the same in the forenoon of September 9th, intending the same for the defendant and to fill his order.

About noon on said 9th day of September the parties met; the plaintiff told defendant that he had not sent the car on morning train; had let his loaded cars go on to New York, but he had loaded another car that forenoon to put in its place, and pointed to it, and requested the defendant to go and look at it, which the defendant said he would do after dinner.

The defendant looked over a car-load of potatoes which he supposed was the one intended for him, but which, in point of fact, was not, but a different car; was dissatisfied with them, and went immediately to the other dealer there, Mr. Gould, bought a car-load of him, and forwarded the same to his customer in Boston, Nelson & Clark, to fill their order.

The plaintiff, not hearing from the defendant, shipped the car loaded in the forenoon to said Nelson & Clark on the four o'clock afternoon train of that day. This car was as good in

quality when shipped as either of the two cars sent to New York on the morning of the same day, and contained 502 bushels. The parties met four or five days after the car was sent, and plaintiff asked for his pay, and this was the first knowledge that the defendant had that the plaintiff had shipped a car-load of potatoes to Nelson & Clark, and defendant declined to pay for the same, and claimed that he had not bought them.

After this interview defendant wrote Nelson & Clark to do the best they could with the potatoes, and make returns of that car-load to the plaintiff. Potatoes rotted badly that season, and Nelson & Clark made returns of this car to plaintiff, under date of September 23, 1891, that there were " about 100 bush. rot in this car," and enclosed a check for $54.00. This check the plaintiff returned at once to Nelson & Clark, claiming his deal was with the defendant and not with them.

*J. C. Baker* for the defendant.

The minds of the parties never met and there was no contract of sale. *Durrill* v. *Lawrence*, 10 Vt. 517 ; *Ins. Co.* v. *Beatty*, 119 Penn. St. 6 ; *Sawyer* v. *Brossart*, 67 Iowa 678 ; *Corcoran* v. *White*, 117 Ill. 118.

The defendant did not receive any part of the potatoes. *Howe* v. *Palmer*, 3 B. & A. 321 ; *Green* v. *Merriam*, 28 Vt. 801 ; *Bassett* v. *Camp*, 54 Vt. 232 ; *Rodgers* v. *Jones*, 129 Mass. 420 ; 1 Benj., Sales, (4th Am. Ed.) 160.

*Geo. E. Lawrence* and *F. S. Platt* for the defendant.

The plaintiff was justified in treating the contract of sale as complete when he shipped the potatoes. *Strong* v. *Dodds*, 47 Vt. 348.

MUNSON, J. Plaintiff and defendant, residents of Pawlet, had negotiations relative to a car-load of potatoes, to be

shipped by the plaintiff to defendant's customer in Boston. The plaintiff, assuming that a sale had been effected, made the shipment. The defendant did not consider the potatoes purchased, and had no knowledge of the shipment until the plaintiff called upon him for payment. When thus called upon, the defendant declined to pay for the potatoes, and claimed that he had not bought them; but afterwards, without further communication with the plaintiff, he wrote to the consignees, directing them to do the best they could with the shipment and make returns to the plaintiff.

We think the action taken by the defendant placed him upon the footing of a purchaser. In ordering the property sold he treated it as his own. His direction to remit the avails to the plaintiff did not change the character of his act. He had no authority to dispose of the property on the plaintiff's account. His action was, therefore, inconsistent with his claim that the plaintiff was still owner. In dealing with the property he accepted it, and thereby assented to the plaintiff's claim that it had been sold to him.

In *Parker* v. *Palmer*, 4 B. & A. 387, the plaintiff sought to recover the price of a quantity of rice sold by sample. The rice delivered was inferior to the sample; but the defendant, after seeing fresh samples, put the rice up for sale at auction, and, upon its failure to bring a fixed price, had it bid in for himself. It was held that by thus attempting to dispose of the property he had treated the sale to him as valid, and that he could not afterwards claim that it was void.

In *Chapman* v. *Norton*, 11 M. & W. 534, the claim was for a cargo of oil cake sold by sample. The defendant landed the cargo, but claimed it did not answer the sample and refused to accept it. After some correspondence, the defendant notified the plaintiffs that if no directions concerning the property were given by them he should sell it and apply the proceeds in liquidation of his damages. The plaintiffs replied that they considered the transaction closed, and the defendant

thereupon sold the property in his own name and held the avails. It was held that the defendant could not be considered an agent of the plaintiffs from necessity for the sale of the property, and that his action must be treated as an acceptance.

In *Bartholomea* v. *Paull*, 18 W. Va. 771, goods not ordered had been sent to the defendant, as if sold, and the defendant, although disclaiming a purchase, had permitted a third person to select and retain a portion of the goods, with an understanding that he account for them to the plaintiffs. It was held that this disposition of a part of the goods was an act of ownership, and that it made the defendant liable as a purchaser for the entire bill.

It is true that the property in suit was of a perishable nature, and that an authority to dispose of such property is sometimes implied from necessity. A master whose ship is freighted with a perishable cargo may sell it for the owner when driven into an intermediate port. A factor whose authority to sell is limited to a future day may sell in disregard of the limitation when the condition of the property is such as to require immediate action. This authority rests upon the ground that an unforeseen emergency has arisen which requires that action be taken before communication with the owner can be had. It is conceivable that circumstances might arise in which a claimed vendee ¦could dispose of perishable property on this ground without subjecting himself to liability. But it must be remembered that the rules above given had their origin in a time when seasonable communication with a distant owner was impossible. Our present facilities of communication leave but little room for an expansion of the doctrine of agency from necessity. When the owner can be called upon to act for himself the reason for the rule fails. In this case the parties were neighbors, and if any further information or notice to the plaintiff was necessary to relieve the defendant from responsibility he could easily have given it in a personal interview. It cannot be said that the defend-

ant was required by the circumstances to do anything inconsistent with his claim. He should have thrown upon the plaintiff the responsibility of taking action in regard to the property.

*Judgment affirmed.*