## ROYAL CARD & PAPER CO. v. DRESDNER BANK.

Circuit Court of Appeals, Second Circuit.
August 20, 1928.

No. 246.

1. Banks and banking ⬅191—Jury's verdict for plaintiff, suing bank to recover for breach of oral contract to honor drafts, held equivalent to finding contract was entered into.

In action for breach of oral contract by bank to honor drafts only after checking invoices against orders, in consideration of agreement to have letter of credit negotiated only through bank, verdict of jury for plaintiff was equivalent to finding that such contract was actually entered into.

2. Sales ⬅22(3)—Commission broker, if exceeding authority by sending goods at price greater than specified thereby, offered goods to buyer which, if accepted, were accepted at invoice price.

Where order for goods given commission broker merely placed limitation beyond which broker had no authority to go in placing orders for buyer, act of commission broker, if exceeding authority by sending goods at price greater than specified, constituted offer of goods to buyer at price invoiced, and buyer, if accepting goods, accepted them at invoice price.

3. Sales ⬅22(3)—Unauthorized shipments, sent buyer by broker, gave buyer privilege of rejecting, but on acceptance buyer was required to pay invoice price.

Where order given commission broker merely placed limitation beyond which broker had no authority to go in placing orders for buyer, unauthorized shipments, sent buyer, gave buyer privilege of rejection; but, if buyer accepted goods, it was obliged to pay invoice prices.

4. Banks and banking ⬅191—Purchaser could hold bank for damages resulting from bank's paying drafts without checking invoices against orders, only if rejecting unauthorized shipment.

On arrival of goods purchased in foreign country through broker, purchaser had option of rejecting or accepting such goods as did not conform to his orders, and, if it rejected goods, purchaser could hold bank paying drafts for damages resulting from bank's paying drafts contrary to contract, requiring bank to check invoices against orders, and permitting payment for goods not corresponding to orders.

5. Banks and banking ⬅191—Purchaser, accepting goods conforming to orders, was required to pay invoice price, and suffered no damage by bank's paying drafts without checking invoices against orders.

Purchaser, if accepting goods not conforming to orders, thereby purchased at invoice prices, and payment by bank of drafts for goods, though constituting breach of contract to check invoices against signed orders, caused purchaser no damage.

6. Banks and banking ⬅191—Purchaser held to have accepted goods not conforming to order, losing privilege of rejection, and could not recover damages against bank not checking invoices against orders.

In action by purchaser of goods against bank, through which letter of credit was negotiated, for breach of oral contract to honor draft only after checking invoices against signed orders, where evidence failed to show purchaser ever notified broker or seller that it would reject any of goods shipped not conforming to orders, but merely notified bank of refusal to accept all shipments, but showed that purchaser treated goods as its own, pledging goods for debt it might incur to bank issuing letter of credit, purchaser lost privilege of returning goods to seller, testimony that they were subsequently returned being immaterial, and could recover no damages against bank for permitting payment for goods not corresponding with orders.

7. Sales ⬅22(3)—Purchaser could accept or refuse goods sent without order, but was bound to indicate to seller intention to refuse goods.

Goods sent by seller to purchaser, without any orders therefor, having been placed by purchaser's agent, could be accepted or refused by purchaser, and, until accepted, goods remained property of seller; but purchaser was bound to indicate to seller, or at least to broker, intention to refuse goods in order to effectuate such intention.

8. Sales ⬅22(3)—Purchaser, having privilege of rejecting goods, but reselling goods, though for seller's account, is regarded as accepting goods.

When purchaser has privilege of rejecting goods, and instead of exercising such privilege it resells goods, it is ordinarily regarded as act of acceptance, though buyer directs sale be made for seller's account.

9. Banks and banking ⬅191—Purchaser held to have accepted goods not ordered, becoming bound for invoice prices, and could not recover damages against bank for paying for goods.

Where goods not ordered were shipped to purchaser, and purchaser did not indicate to seller or broker intention not to accept goods, and after discovering goods were not ordered sold goods for account of bank paying drafts, in violation of contract to check invoices against orders, purchaser, as against seller, is deemed to have accepted goods, and became bound to pay for them at invoice prices, and hence could not recover damages against bank for paying for goods not ordered.

10. Trial ⬅159—Dismissal on merits on reserved motion against plaintiff recovering verdict, but not showing damage, held error, though nonsuit was proper.

Where plaintiff sued for breach of oral contract, and court reserved decision on motion for nonsuit until after verdict, and plaintiff recovered verdict, but failed to show damage, it was not error to grant the motion, but it was error to dismiss complaint on merits.

In Error to the District Court of the United States for the Southern District of New York.

Action for breach of oral contract by the Royal Card & Paper Company against the Dresdner Bank, a German corporation, relating to letter of credit issued by the Irving National Bank for plaintiff's account and negotiated through defendant. Verdict of jury in favor of plaintiff was set aside, and the complaint dismissed on the merits, and plaintiff brings error. Modified and affirmed.

Spiro & Abrams, of New York City (Edmund L. Mooney and Wilber W. Chambers, both of New York City, of counsel), for plaintiff in error.

Sullivan & Cromwell, of New York City (E. H. Sykes, of New York City, of counsel), for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. In order to facilitate the purchase of goods in Germany, plaintiff procured from Irving National Bank of New York a letter of credit running to Samuel Baron, or assigns, drafts thereunder to be drawn against documents for merchandise to be shipped to New York not later than August 31, 1920. On February 28, 1920, Baron assigned this letter of credit to Gebrüder Kratzmann, a Hamburg commission firm, and indorsed upon the face thereof:

"Assigned to Gebr. Kratzmann, Hamburg, Germany, in accordance with my letter of February 28, 1920."

[1] The letter referred to stipulated that "this letter of credit is to provide payment only for goods shipped on orders placed by me, and signed by me, but not for any other merchandise." It also stated that the letter of credit was to be negotiated through the defendant. It is asserted by Baron, though his testimony is disputed, that, in consideration of his agreeing to have the letter of credit negotiated only through the Dresdner Bank, the latter orally agreed to honor drafts thereunder only after checking invoices against orders, in order to see that the drafts were negotiated in accordance with the terms of the assignment as well as of the letter of credit. For the breach of this alleged oral contract the present action was brought. The jury's verdict is equivalent to a finding that such a contract was actually entered into. The damages claimed are those alleged to have resulted from the failure of defendant to check invoices against orders, thus permitting payments to be made for goods which did not correspond completely with plaintiff's orders, or for which plaintiff had signed no order.

To insure against fluctuations in the rate of exchange, plaintiff requested the Irving National Bank to amend the letter of credit by permitting Baron to draw one-half the credit and establish a so-called "mark fund" therewith. This was agreed to, the Irving Bank cabling to defendant that Baron was authorized to draw as requested, "provided you hold marks and pay only against shipping documents in accordance with terms of credit." The defendant accordingly honored Baron's draft for $47,000 on April 23, 1920, and established a fund of 2,820,000 marks. Under Baron's testimony, the jury might have found that the oral agreement as to checking invoices against orders applied to the mark fund, as well as to the original letter of credit. The creation of this fund does not, therefore, affect the nature of the obligation sued on. It is set out only because the complaint alleges two causes of action, the first involving drafts drawn against this mark fund, and the second dollar drafts negotiated through the defendant.

On the first cause of action the jury rendered a special verdict, awarding damages of $60.44 for overcharges, $40.76 for overshipments, and $4,897.10 for merchandise not in accordance with orders—a total of $4,998.30.

The second cause of action alleges a breach of the contract in honoring two drafts drawn in payment for silks (invoice 37) and furs (invoice 43), for which orders had neither been placed nor signed by Baron. The jury returned a verdict for $15,713.48 on this cause of action.

The court then directed a general verdict for the total amount awarded on both causes of action, at the same time reserving decision upon defendant's motions to set aside the verdict and for a nonsuit; the latter motion having been seasonably made and consideration thereof reserved until after verdict. Upon these motions the court thereafter set aside the verdict and dismissed the complaint, on the grounds that (1) the evidence was overwhelmingly against the existence of the alleged oral contract, and (2) the plaintiff failed to prove damages.

For the purpose of this appeal it may be assumed that the contract sued on was in fact entered into between Baron and an authorized representative of the defendant.

Discussion will be limited to the proof of damage.

As to the "overcharge" item of $60.44, plaintiff claims that the invoice price was more than the price specified in Baron's signed order for certain sets of dominoes, and that by failing to check invoice against order defendant, contrary to its contract obligation, permitted payment of a draft which included payment for these domino sets at an unauthorized price. Baron's order (signed also by Gebr. Kratzmann) instructed Kratzmann to place orders for the purchase by plaintiff of a large number of articles, including the dominoes, at specified prices. It contains the following notation:

"The above prices are to-day's prices, which are only as a basis on the order. The prices at time of shipment will be invoiced. Possibility of delivery reserved. We have noted the order for you under the above conditions, and will include in our invoice our expenses and our commission of 5 per cent. Payment as agreed against your letter of credit. If prices advance, do not pay more than 20 per cent. additional."

[2, 3] It will be observed that there was no contract to furnish plaintiff goods at any price. The order merely placed a limitation beyond which Kratzmann had no authority to go in placing orders for plaintiff. If the commission broker exceeded that authority by sending goods at a price greater than 20 per cent. above that stated, his acts constituted an offer of the goods to plaintiff at the price invoiced. If plaintiff by its conduct accepted these goods, as it will hereafter be shown to have done, it accepted them at the invoice price. The items for overshipments and merchandise not in accordance with orders must be dealt with in the same way. Excess shipments and shipments unauthorized in other respects gave plaintiff the privilege of rejection, but, if it accepted the goods, it was obliged to pay the invoiced prices. Williston, Sales, § 461. Therefore, even though defendant's payments of drafts were a breach of contract, where the invoices did not correspond with signed orders, plaintiff cannot complain, unless it rejected the goods shipped without its authority. See Lunn v. Guthrie, 115 Iowa, 501, 88 N. W. 1060.

Hence it is necessary to determine whether, as between plaintiff and Gebr. Kratzmann, or the sellers, if Kratzmann was but a broker, the evidence showed an acceptance by plaintiff of the goods which did not conform to its orders.

Baron returned to New York on May 15, 1920. At this time none of the goods in-

volved in the first cause of action had yet arrived in this country. On May 21st he wrote Kratzmann, complaining of the great business depression existing in America, asking him to cancel certain orders not yet filled, and expressing the hope of resuming importations when conditions should improve. On May 28th, Baron wrote to defendant that he had found a number of discrepancies between invoices, against which defendant had paid drafts, and orders placed by him, and that for this reason he had instructed his bankers to cable defendant not to make further payments under the letter of credit. Such a cable was sent by the Irving National Bank on June 7th. An exchange of correspondence occurred, in which plaintiff affirmed and defendant denied that it was obliged to observe any conditions other than those stated in the letter of credit itself. July 22d Baron wrote defendant that "we have refused to accept all shipments made after we canceled the balance of these letters of credit," and by letter of August 2d plaintiff notified defendant that the silks and furs (second cause of action) were held subject to defendant's order and at its risk, reserving "the right to sell for your account," if prompt reply was not received.

By July 15th all of the goods with respect to which damages were awarded in the first cause of action had reached New York, and were placed in warehouse under warehouse receipts, which were held by the Irving National Bank against its payments under the letter of credit. On September 15th plaintiff delivered to said bank its note for $8,000, payable February 15, 1921, and pledged as collateral security therefor, and for any other debt to the bank, "whether now existing or hereafter arising, * * * the following property owned by the undersigned," namely, the warehouse receipts covering the merchandise involved in the first cause of action. As to the subsequent disposition of the goods we have only Baron's testimony that it "was sent back to Germany." Whether this was after or before plaintiff's note matured on February 15, 1921, and whether it was sent to defendant, or Kratzmann, or some one else, does not appear.

[4-6] Upon the arrival of the goods, plaintiff had the option of rejecting or accepting such as did not conform to its orders. If it rejected them, it could hold defendant responsible for paying out plaintiff's money—or, more accurately, causing plaintiff to incur an obligation to reimburse the Irving National Bank on its letter of credit—contrary to defendant's contract obligation; if it accepted

them, it purchased at the invoice price, and defendant's payment caused it no damage. There is no evidence that plaintiff ever notified Kratzmann or the sellers that it would reject any of the goods. The notification in Baron's letter of July 22d to defendant is not notice to Kratzmann; nor can it be assumed from the guaranties of July 8th and 14th that defendant passed on the notice to Kratzmann, for they antedate it. On the contrary, it appears that, instead of rejecting, plaintiff, on September 15th, treated the goods as its own, pledging them, not only for its $8,000 note, but also for any debt which it might thereafter incur to the Bank.

Such conduct is inconsistent with the contention that title never passed to plaintiff. See White v. Schweitzer, 221 N. Y. 461, 465, 117 N. E. 941; Georgia Refining Co. v. Augusta Oil Co., 74 Ga. 497; Brown v. Nelson, 66 Vt. 660, 30 A. 94; Hensen v. Beebe, 111 Iowa, 534, 82 N. W. 942. Thereby it lost the privilege of returning the goods to the seller (whether that be Kratzmann or the dealers with whom Kratzmann as a broker placed the order), and the testimony that they were thereafter returned to Germany was immaterial, even if that testimony were sufficient—which we do not think it was—to justify an inference that they were returned to Kratzmann or the sellers. Consequently the court was correct in holding that plaintiff should have been nonsuited on the first cause of action.

[7, 8] The second cause of action must be decided upon similar principles. It is assumed that the silks and furs were sent without any orders therefor having been placed by Baron. Plaintiff could accept or refuse to accept them. Until accepted they remained the property of the seller, but in view of the course of dealing between the parties plaintiff was bound to indicate to the seller, or at least to Kratzmann, his intention to refuse them in order to effectuate that intention. Moss v. Sweet, 16 Q. B. 493; Hobbs v. Massasoit Whip Co., 158 Mass. 194, 33 N. E. 495; Corbin's Anson on Contracts, § 34, note 2. But plaintiff did more than merely remain silent. The goods arrived before Baron returned to the United States; they were received by plaintiff in ignorance that they had not been ordered, but this was discovered at least as soon as June 4th, on

which date it wrote defendant, charging that drafts had been honored for goods not ordered by Baron. But no notice was ever given to Kratzmann, or to the sellers, and eventually the goods were sold by plaintiff in December, 1920, and August, 1921. When the purchaser has the privilege of rejecting the goods, and, instead of exercising it, resells them, that is ordinarily regarded as an act of acceptance. See White v. Schweitzer, supra; Williston, Sales, § 483. And this is true, even where the buyer directs that the sale be made for the seller's account. Brown v. Nelson, supra.

[9] As between plaintiff and Kratzmann, or the sellers, if Kratzmann be deemed only a broker, plaintiff therefore accepted the goods and became bound to pay for them at the invoice prices. It is true that plaintiff contends that the sale was made for defendant's account pursuant to the notice contained in plaintiff's letter of August 2d. But no theory has been advanced which would authorize plaintiff to act as agent for the defendant in selling the goods. By hypothesis, title was in the seller (whether that be Kratzmann or the dealers from whom he procured them), and had been offered by the seller to plaintiff at the invoiced price, and by dealing with the goods as owner plaintiff would accept that offer. It cannot, as against the seller, say that it was acting as agent of defendant—a stranger to the offer—and therefore did not itself accept title by making a sale or the goods. Plaintiff might have refused to accept the goods it had not ordered, but, having dealt with them in a manner inconsistent with the seller's title it was bound to pay for them at the invoiced price, and it cannot put on defendant the loss it suffered by reason of such purchase. See Lunn v. Guthrie, supra. On the second cause of action, also, the plaintiff proved no damage.

[10] There was no error, therefore, in setting aside the verdict and granting dismissal on defendant's motion for nonsuit. It was error, however, to dismiss the complaint upon the merits. Neil Bros. Grain Co. v. Hartford Fire Ins. Co., 1 F.(2d) 904 (C. C. A. 9).

The judgment is accordingly modified, by striking out "upon the merits," and, as so modified, it is affirmed.