## CAHILL v. MAYFLOWER BUS LINES, Inc., et al.

District Court, S. D. New York.
Aug. 15, 1934.

Lynch, Cahn & Weed, of White Plains, N. Y., for plaintiff.

Philip S. Rivlin, of New York City, for Mayflower Bus Lines, Inc.

John M. Gibbons, of New York City (Edward R. Brumley, of New York City, of counsel), for New York, N. H. & H. R. Co.

CAFFEY, District Judge.

This case was argued before me on April 20. I regret the delay in disposing of it. It has been impossible, however, earlier to take it up, because since the briefs came in following the argument, save for a short vacation, my time has been completely absorbed in other court work having priority.

While a passenger on a bus of the defendant bus line, the plaintiff was hurt. The injury resulted from a collision of the bus with an automobile truck. The place of collision was a bridge on the Boston Post Road, where the highway passes over the track of the defendant railroad company in the village of Rye, Westchester county. The damage to the plaintiff was great. The plaintiff charges that it was due to the negligence of both the bus line and the railroad company.

The accident occurred on March 17, 1932. The trial was in January, 1934. It was presided over by Judge Coleman. It resulted in a verdict for the plaintiff on January 9 (Minutes, p. 707). A motion by the railroad company to set it aside was denied on February 6 (pages 708–711).

At the trial the railroad company moved for dismissal of the complaint and for the direction of a verdict in its favor. On these motions decision was reserved until after verdict (pages 673–674). On March 9, the plaintiff served a notice of motion to continue the trial for the purpose of enabling him to move (a) for a severance as to and the direction of entry of judgment on the verdict against the bus line and (b) for a mistrial or new trial as against the railroad company, with leave to serve an amended complaint. This was returnable March 16.

On March 14 Judge Coleman died, without having decided the reserved motions or the March 9 motion. Thereafter two further motions were made. By order to show cause dated March 20 the railroad company noticed a motion (a) for the designation of another judge to pass on the motions pending at the time of the death of Judge Coleman and (b) for an order granting its motion for a directed verdict. By order to show cause dated March 22 the plaintiff noticed a motion (a) to restore the case to the calendar for trial and (b) to permit service of the previously proposed amended complaint.

In due course the case was assigned to me. The motions noticed by the orders to show cause came on for hearing before me while I was sitting under my regular assignment in the motion part. The plaintiff withdrew his motion covered by the notice of March 9 and the railroad company does not press its motion at the trial for dismissal of the complaint.

The plaintiff insists that neither the court nor any successor judge is authorized to pass on the railroad company's motion at the trial for the direction of a verdict and that a mistrial has resulted, as well as that he should now be allowed to serve an amended complaint. The railroad company insists that the successor judge—or, to put it more precisely, the court with a successor judge sit-

ting—is authorized to decide the motion for a directed verdict and should grant it.

Out of these matters there arise three controlling questions, as follows:

1. May the court, presided over by a successor judge, rule on the motion of the railroad company for the direction of a verdict?

2. If so, is the company entitled to prevail on that motion?

3. If not, should the plaintiff be allowed to serve the amended complaint?

In advance of taking up the questions stated, a few preliminary observations should be made.

The oral argument and the briefs took a wide range.

It was said by counsel for the plaintiff that in order to equip myself to consider the motion for a directed verdict it would be necessary for me to read the entire record of the testimony taken at the trial and that, even then, I could not fairly pass on it because of my not having seen the witnesses.

I have read all parts of the stenographic minutes of the testimony referred to by either counsel, as well as numerous other parts. After doing this (without determining that other grounds are incapable of fair disposition at present), I have concluded, with respect to the motion for a directed verdict, to deal with only a single ground urged before Judge Coleman and urged before me in its support, namely, the claim by the railroad company that certain notices served on it by officials of the village of Rye (Exhibits 18–21) were insufficient to constitute the notice prescribed by section 93 of the Railroad Law as a condition precedent to its liability upon a cause of action such as is alleged against it in the complaint. In construing these instruments—conceded at the trial (Minutes, pp. 254–257) and conceded before me to constitute the only notice given—the credibility of witnesses and the weight of testimony cut no figure. The sole problem is one of interpretation of documents, in conjunction with ascertainment of the meaning of the statute.

■ The motion of the plaintiff for leave to serve an amended complaint having been made after the death of Judge Coleman, from the standpoint of power of the court, on its face, it would seem obvious that another judge can pass on it.

Turning to the merits, the first inquiry is whether I have power to determine the motion for a directed verdict.

■ In 1834 in Life & Fire Ins. Co. of New York v. Wilson, 8 Pet. 291, 303, 8 L. Ed., 949, speaking of the authority of a successor judge to grant a new trial after the death of the trial judge, it was said: "He, as the successor of his predecessor, can exercise the same powers, and has a right to act on every case that remains undecided upon the docket, as fully as his predecessor could have done. The court remains the same, and the change of the incumbents cannot and ought not, in any respect, to injure the rights of litigant parties."

Quite obviously the quoted clause, in the sweeping terms employed, is dictum. Nevertheless, it seems to me that it accurately defines the power of a court, with a successor judge sitting, to determine matters sub judice which remained undecided in the hands of a predecessor judge when he died, resigned, or in any other way ceased to hold office. My attention has not been called to, and I have not discovered, any authoritative case which has modified the rule as phrased in the statement of it by the Supreme Court itself so many years ago.

It is settled for this court that a successor judge may impose sentence where there has been a conviction in a criminal case tried through the rendition of verdict before, but no sentence actually imposed by, the trial judge. Chin Wah v. United States (C. C. A.) 13 F.(2d) 530, 532. It seems to me impossible, and certainly it is impossible in principle, to distinguish this holding so as to refuse it application here. Unless sentence has been imposed in a case where there has been a conviction, it is unfinished. A case in which a ruling on a motion has been reserved, and not made, is no less and no more unfinished than is a case in which it remains to sentence the defendant. It is because, and as I see it it is only because, the court has the power as announced in the Wilson Case, supra, that sentence may lawfully be imposed by a successor judge.

■ It is plain, and I believe is undisputed, that under the reservation made by him at the trial, if still alive, Judge Coleman could determine the motion for a directed verdict. Hoffman v. American Mills Co. (C. C. A.) 288 F. 768, 773; Clemence v. Hudson & M. R. Co. (C. C. A.) 11 F.(2d) 913, 915; Bohenik v. Delaware & Hudson Co. (C. C. A.) 49 F.(2d) 722, 724; Italian Star Line v. U. S. Shipping Board E. F. Corp. (C. C. A.) 53 F.(2d) 359, 360, 80 A. L. R. 576. Cf. Royal Card & Paper Co. v. Dresdner Bank (C. C. A.) 27 F.(2d) 791; Isaacson v. United States (D. C.) 3 F. Supp. 350.

Does his death make a difference in the power of the court to act? I think not.

When the letters to show notice to the railroad company of alleged defects at the bridge were put in by the plaintiff, Judge Coleman explained to counsel, and (at least by silence) there was acquiescence in, his plan to reserve decision on the effect of these writings until after the verdict had been rendered (Minutes, p. 255). At the close of the testimony when the railroad company moved to dismiss the complaint, he put on the record a stipulation designed to carry out the plan (Minutes, p. 673). The railroad company then moved for a directed verdict and Judge Coleman said (page 674): "I will reserve decision upon that motion also under a stipulation that I may decide each one of these motions after the rendition of the verdict and in the absence of the jury and in the absence of counsel, and I note an exception now in favor of any party ruled against."

Counsel for the railroad company assented to the procedure (page 675). While counsel for the plaintiff did not expressly assent, he interposed no objection (pages 673–679a).

■ For the plaintiff it is argued that the reservation was to Judge Coleman alone. I assume that the basis for this contention is that the judge employed the pronoun "I." I think, however, that the reservation was not to Judge Coleman personally, but was to the court itself as a court. Cf. In re United States, 194 U. S. 194, 24 S. Ct. 629, 48 L. Ed. 931; Craig v. Hecht, 263 U. S. 255, 273–276, 44 S. Ct. 103, 68 L. Ed. 293. If so, then it is unequivocally plain that there was consent by both sides to the procedure as he outlined it. Otherwise, the word "stipulation" used by him would be rendered meaningless.

If I be correct in construing the action at the trial as an assent by the plaintiff to the decision by the court after verdict of the motion for a directed verdict, and not as being restricted to a decision of that motion by Judge Coleman individually, then Thomas-Bonner Co. v. Hooven, Owens & Rentschler Co. (C. C. A.) 284 F. 386, 392–393, lends strong support also to the conclusion I have reached. There is this difference in the facts: In the case last cited no objection was made at the hearing before the successor judge to his determining the motions reserved at the trial, whereas here the plaintiff stoutly contests the right of any judge, or even of any court, to rule on the motion. He goes so far as to say that of necessity a mistrial must follow from the death of the trial judge. If that be true, then the language of the Wilson Case set out above must be greatly altered, if not completely repudiated.

■ It is true, of course, that where decision of a reserved motion involves credibility of witnesses, it would be wholly unfair for a successor judge to pass on it. It would accordingly be error for him to pass on it, and in those circumstances the only proper thing would be to award a new trial. Penn Mut. Life Ins. Co. v. Ashe (C. C. A.) 145 F. 593, 7 Ann. Cas. 491; 28 USCA § 776. The fact, however, that the exercise of power in a particular way or under particular circumstances would be wrong does not establish; or even have a tendency to show, that the power does not exist. If power to rule on the motion for a directed verdict exist, failure to exercise it in the case at bar, as I see it, would deprive the railroad company of a right. Clearly a ruling can be made without unfairness to the plaintiff. The sole issue with which I am dealing, in connection with the motion, does not require consideration of oral testimony or any dispute as to the facts. On the contrary, it can be disposed of exclusively upon documentary evidence. The reason for the rule, therefore, applied when oral testimony must be weighed is without any force whatsoever here.

I do not think that there is anything to the contrary in Freeman v. United States (C. C. A.) 227 F. 732. It was there held unlawful to substitute one judge for another during the course of taking the testimony at a criminal trial. A substitute judge would be wholly unable to perform the vital function of advising the jury about the value of testimony given by witnesses out of his presence. That reason alone might be enough to support the decision, without resting it on any other. Moreover, the primary, if not the essential, premise of the holding in the Freeman Case, to the effect that, except in a petty case, a defendant charged with crime is not free to waive a jury trial, has since been wholly removed by Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263.

There are several cases in which the duty of successor judges to pass on motions for signing judgments or for new trials or to settle and sign bills of exceptions have been discussed. Among those I have examined are Sanborn v. Bay (C. C. A.) 194 F. 37, and Brent v. Chas. H. Lilly Co. (D. C.) 202 F. 335. Neither of these appears to me in point; but so also I discover in them noth-

ing at variance with the conclusion I have reached.

So as to avoid misunderstanding; out of abundance of caution, I add that I do not hold either (1) that consent of the plaintiff to Judge Coleman reserving decision was needed in order that the court, with a successor judge sitting, might be authorized to act on the motion for a directed verdict, or (2) that the sole ground open to consideration by the successor judge is the one with respect to notice which I have chosen for discussion thus far.

Assuming that there is power now in the court, through the successor judge, to pass on the motion for a directed verdict, what should the decision be?

The Boston Post Road passes by an overhead bridge across and above the railroad at the point where the accident occurred. The bridge was constructed many years ago, prior to July 1, 1897. Additions were made in 1927 and 1928. The railroad company argues, as I understand, that the question of its liability is dependent on the law as it stood at the time the bridge was originally built or at least as the law stood previous to the 1927-28 additions. The plaintiff argues that section 93 of the Railroad Law (Consol. Laws, c. 49) in its present form controls. Without passing on the dispute, the view of the plaintiff on the point, as to what statute governs, will be accepted.

The provision as to notice was brought in by section 1 of the Laws of 1902, c. 140. It applies alike to the highway which is on the bridge and to the highway constituting the approaches to the bridge.

The statute places on the municipality in which the bridge is located—in this instance the village of Rye—the primary obligation to repair both the roadway over the bridge "and the approaches thereto." There is no duty imposed on the railroad company to repair the highway, either on the bridge or on the approaches, save after ten days' written notice, given by the municipal authorities, of "any defect in the roadway thereover and the approaches thereto." In express terms the statute further provides that "the railroad company shall not be liable by reason of any such defect unless it shall have failed to make repairs within ten days after the service of such notice upon it." It has been specifically ruled that notice, in compliance with the statute, is a prerequisite to liability. Burchard v. Payne, 197 App. Div. 829, 189 N. Y. S. 249, affirmed 233 N. Y. 671, 135 N. E. 964. In the language of the New York Court of Appeals (page 672 of 233 N. Y., 135 N. E. 964) such notice must be of "the defect complained of." The plaintiff put on the record at the trial his recognition of this proposition (Minutes, pp. 376, 377).

The bus was traveling from Boston to New York. Where the accident occurred the highway reaches the bridge from the north. There is a line, at the northerly edge of the bridge, between the approaches to and the surface of the bridge. Some of the witnesses called this line the "abutment" and others called it the "parapet." The approaches extend to the north of and the surface of the bridge extends to the south of that line.

From north to south the bridge is about 300 feet long. The collision occurred on its surface toward the southerly end.

There is no evidence whatever of any hole existing at the time on that surface, which caused or contributed to the collision. Judge Coleman was of this opinion (Minutes, p. 239), and I believe counsel are in complete agreement upon the point. We are, therefore, not concerned with whether the municipality ever gave notice to the railroad company of holes on the surface of the bridge. In the absence of any basis in the evidence for a finding of negligence by the railroad company predicated on the failure to repair holes, whether notice to repair them was given is obviously irrelevant.

There was evidence, however, of a depression in the highway within the area of the approaches lying northerly of the bridge; also of there being on the bridge, within the area of its surface, a mound or hump, adjacent to the depression (see, for example, Minutes pp. 87, 88, 148, 152, 157, 243–252, 622–625, 635, 636). It is contended by the plaintiff, and for the sake of argument it will be conceded, that the jury might have found that the depression or the depression coupled with the hump contributed to producing the collision. This being true, it becomes material to consider whether the village authorities gave to the railroad company notice of the depression or of the hump or of both. Otherwise put, was the depression or the hump, or were the two in their relationship, within the language of the Court of Appeals in Burchard v. Payne, 233 N. Y. 671, 672, 135 N. E. 964, a "defect complained of" by the village?

I feel that mere inspection of the only relevant papers (Exhibits 18, 19, 20, and 21) answers the question. These mention only holes "on" the bridge. They do not

mention the hump at all. Neither do they mention the depression, nor do they mention any other type of defect on the approaches. It would do violence to the language employed in the four notices to attribute to any of them the design to denominate the depression or the hump or the two in combination as a "defect," within the meaning of the statute, or as a request that either or both be removed or repaired.

■ No notice having been served as prescribed by the statute, the result is that the railroad company was entitled to have its motion for a directed verdict granted.

The plaintiff says that a depression is a hole, relying on Faber v. City of New York, 213 N. Y. 411, 414, 107 N. E. 756. Even if this be so, however, it would not help him. The notices plainly do not mention any hole in the approaches.

Should the amended complaint be allowed?

■ The proposed amended complaint counts on the same cause of action against the railroad company as was set out in the original complaint. The sole substantial difference is that, in paragraph 7, additional specifications of negligence by the railroad company are set out. As phrased by the plaintiff, the essence of the change sought to be made is to bring in a charge that there was actionable fault by the railroad company in the structure itself, as distinguished from mere failure to repair a defect. In these conditions, manifestly a judgment favorable to the railroad company on the original cause of action would bar recovery on the cause of action as stated in the proffered amended complaint. Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069. A consequence of this is that if the railroad company was entitled to a directed verdict, then likewise it was entitled to final judgment in its favor. A further consequence is that before an amendment can properly be allowed, the plaintiff must establish that he is entitled to a new trial.

■ Affidavits in support of the application for allowance of the amended complaint are attached to the March 9 notice of motion. These utterly lack any showing of failure by the plaintiff, after the exercise of due diligence on his part, preceding the trial, to have discovered the new matter sought to be incorporated by amendment. On the contrary, the affidavit of the engineer Vanneman, offered by the plaintiff, quite clearly indicates that the essence of the new matter was known to him when he testified at the trial, or at least that he learned it during the trial. In the absence of showing that the new matter has been discovered since the trial, as well as that failure to discover it previous to the trial was without fault on the part of the plaintiff after the exercise of diligence, the allowance of the amendment would be improper. Toledo Co. v. Computing Co., 261 U. S. 399, 43 S. Ct. 458, 67 L. Ed. 719.

Motion of the plaintiff for continuance of the trial and allowance of the amended complaint denied, with exception to the plaintiff. Motion of the railroad company for a directed verdict granted, with exception to the plaintiff.

Settle order, in accord with the foregoing, on three days' notice.