WILLIAM H. ZINN *vs.* WILBUR P. RICE.

Suffolk.    November 24, 1893. — June 22, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Abuse of Legal Process — Excessive Attachment — Exceptions — Instructions as to Malice — Attorney — Measure of Damages.*

A point not taken at the trial in the Superior Court on the merits is not open on a bill of exceptions.

At the trial of an action for alleged abuse of legal process in the excessive attachment of the real estate of the plaintiff and the stock of goods in his store, in the instructions, not excepted to, as to the defendant's personal conduct, malice was defined as acting in bad faith, and the jury were told that if the defendant, with the design to injure or oppress, by fixing an excessive *ad damnum,* went beyond what he believed to be necessary to secure the payment of the judgment which he might recover, by forcing payment of a sum larger than would otherwise be paid, he was not acting in good faith, and that that would warrant an inference that he was acting maliciously, and in the instruction excepted to they were told to apply the same test to the conduct of the attorney, and the substance of the instruction was that the defendant was as responsible for such malice on the part of his attorney as for his own. *Held,* that under the circumstances the instruction did not harm the defendant.

At the trial of an action for alleged abuse of legal process in the excessive attachment of the real estate of the plaintiff and the stock of goods in his store, evidence was admitted, subject to the defendant's exception, of inquiries about the attachment made of the plaintiff by mercantile agency reporters and by people who sold him goods, of conversations of neighbors with his superintendent and inquiries by them and by the employees as to what the attachment meant, of the fact that a creditor attempted to collect through a lawyer a debt of which payment had been remitted to the creditor on the day it was due, of a copy of a mercantile paper containing a notice of the attachment with evidence of the circulation of that paper, and also of the reports of commercial and trade agencies as to the attachment. *Held,* that all the circumstances which the evidence tended to show were natural results of the defendant's act in making the excessive attachment, and tended to prove damage resulting in an injury to his business, and that, as none of the acts were wrongful acts of third persons, it was not necessary to consider what difference it would have made if the acts shown as tending to prove loss of credit or injury to trade had been wrongful acts of others. *Held, also,* that if the mercantile paper and the agency reports had been inadmissible for any purpose, the fair construction of that part of the charge which forbade the jury to allow damages for any acts giving currency to the fact that an excessive attachment had been made if such acts were not authorized by the defendant, as no request for a specific withdrawal of the evidence was made, is that the evidence was itself understood to have been withdrawn from their consideration.

While at the trial of an action for alleged abuse of legal process in the excessive attachment of the real estate of the plaintiff and the stock of goods in his store, a wide range of evidence may be admissible, in the discretion of the pre-

siding justice, upon the injury caused to the value of the plaintiff's business considered as a whole, and to what is called its good will, yet he cannot show the course of his business from its inception down to the time when he sold it out, eleven months after the date of the attachment, which included a period of nine years prior to the attachment, during the first two of which he had a partner, and in the nine years his connecting stores had come to have twenty-four departments; nor can he testify that there had been a steady and large increase in the business year by year, but that the increase in 1889, in February of which year the attachment was made, was as a whole less than the increase for January of that year, so that the business for the part of the year subsequent to the attachment decreased.

If at the trial of an action for alleged abuse of legal process in the excessive attachment of the real estate of the plaintiff and the stock of goods in his store, pneumonia from which the plaintiff suffered can be in any way shown to be a natural and probable consequence thereof, a point upon which this court expresses no opinion, it cannot be so shown by the testimony of one who has no special knowledge of the subject.

TORT, for alleged abuse of legal process. Writ dated April 8, 1889. At the trial in the Superior Court, before *Dunbar, J.*, the jury returned a verdict for the plaintiff, and the defendant alleged exceptions, which sufficiently appear in the opinion. Other counsel than those for the defendant made the attachment in the original case.

*R. M. Morse*, (*G. P. Wardner* with him,) for the defendant.

*C. W. Bartlett & B. L. M. Tower*, for the plaintiff.

BARKER, J. The defendant contends that there was error in the admission and exclusion of evidence, and also in the instruction that, if the attorney acted maliciously when the matter was left with him for the purpose of bringing suit, the defendant was responsible for the malicious acts of his attorney in levying the excessive attachment, and must respond in damages in the same way as if the malice had been that of his own personal creation and exertion.*

---

* The plaintiff offered in evidence at the trial the writ in the suit of Wilbur P. Rice *v.* William H. Zinn, dated February 7, 1889, in which the *ad damnum* was laid at $40,000, and the return of service thereon, from which it appeared that on February 9 the defendant Zinn's real estate in Middlesex and Suffolk counties was attached, and that on February 12 an attachment was placed on the stock of goods in his store on Washington Street, Boston. On February 13, on application to the Superior Court, the attachment was ordered to be reduced to $10,000, in which sum a bond with sureties was given on the same day. Zinn had no real estate in Suffolk County, but owned the equity in certain land and buildings in Somerville.

The officer who made the attachment in Zinn's store left in charge a

1. The defendant now contends that, if his attorney without his knowledge or authority, and to gratify the personal malice of the attorney, made an excessive attachment, the defendant is not liable therefor; and that the distinction between the liability of a master for the malicious act of the servant in the course of his employment, and for the malicious act of the servant to gratify his personal malice, was not clearly presented in the instructions. Without discussing the distinction for which the defendant contends, it is enough to say, in overruling his exception, that the bill of exceptions discloses no evidence of personal hatred or ill will on the part of the attorney, or that he took advantage of his employment to secure any private end or advantage of his own, or to gratify his own personal malice; and no request was made for instructions upon the point now relied upon, either before or after the instruction excepted to was given. The presiding justice was not called upon to deal with the precise question now raised, and, whatever may be the true rule to be applied where there is evidence that an agent has acted to gratify his own personal malice, the omission to deal with it in the instruction was not error. In the instructions not excepted to as to the defendant's personal conduct, malice had been defined for the purposes of the case as acting in bad faith, and the jury had been told that if the defendant, with the design to injure or oppress, by fixing an excessive *ad damnum*, went beyond what he believed to be necessary and proper to secure the payment of the judgment which he might recover, by forcing payment of a sum larger than would otherwise be paid, he was not acting in good faith, and that that would warrant an inference that he was acting maliciously. In the

---

keeper, who remained there for about twenty-four hours, when the officer appointed in his place, as keeper, Zinn's superintendent. No attempt was made at any time to interfere with the sales in the store, and no goods were actually removed or touched.

The attachment was removed on the morning of the 14th. No declaration was inserted in the writ when delivered to the officer for service, but the same was subsequently filed when the case was entered in court. The declaration alleged a breach of contract by Zinn in failing to pay a balance due Rice for the construction of ten houses in Somerville for the sum of $22,250, the balance claimed to be due under the contract and for extras, being about $4,300.

instruction excepted to, they were told to apply the same test to the conduct of the attorney, and the substance of the instruction was that the defendant was as responsible for such malice on the part of his attorney as for his own. Under the circumstances, this did not harm the defendant. See *Levi* v. *Brooks*, 121 Mass. 501; *Shattuck* v. *Bill*, 142 Mass. 56.

2. Evidence was admitted, subject to the defendant's exception, that inquiries about the attachment were made of the plaintiff by mercantile agency reporters and by people who sold him goods; also evidence of conversations of neighbors with the superintendent of the plaintiff's store, and inquiries by them and by the employees as to what the attachment meant; also of the fact that a creditor attempted to collect through a lawyer a debt of which payment had been remitted to the creditor on the day it was due; also a copy of The Banker and Tradesman, a mercantile paper, containing a notice of the attachment, with evidence of the circulation of that paper; and also evidence of the reports of commercial and trade agencies as to the attachment. Speaking generally of the evidence so admitted, all the circumstances which it tended to show were natural and probable consequences to be reasonably expected to result from the defendant's act in making the excessive attachment, and tending to prove damage resulting in an injury to his business. None of the acts appear to have been wrongful acts of third persons, and it is not necessary to consider what difference it would have made if the acts shown as tending to prove loss of credit or injury to trade had been wrongful acts of others. See *Hayes* v. *Hyde Park*, 153 Mass. 514, 516, and cases cited; *Elmer* v. *Fessenden*, 151 Mass. 359, 362, 363. If The Banker and Tradesman, and the agency reports had been inadmissible for any purpose, the fair construction of that part of the charge which forbade the jury to allow damages for any acts giving currency to the fact that an excessive attachment had been made if such acts were not authorized by the defendant, as no request for a specific withdrawal of the evidence was made, is that the evidence was itself understood to have been withdrawn from their consideration.

3. In that branch of the case bearing particularly on the amount of the plaintiff's damages, we think there was error in

the admission and rejection of evidence. We assume that a legitimate. element of the plaintiff's damages was the injury caused to the value of his business, considered as a whole, and to what is called its good will, and that in dealing with such a question a somewhat wide range of evidence may be admissible, in the discretion of the justice who presides at the trial. But here the plaintiff was allowed to show the course of his business from its inception down to the time when he sold it out, some eleven months after the date of the attachment. This included a period of nine years prior to the attachment, during the first two of which the plaintiff had a partner, and in the nine years his connecting stores had come to have twenty-four departments. He was permitted to testify that there had been a steady and quite large increase in the business year by year since he had been in business, but that the increase in the year 1889 was, as a whole, less than the increase for January of that year, so that the business for the part of the year subsequent to the attachment decreased.

In the first place, the field of inquiry thus opened is so broad as to make it reasonably certain that the circumstance of a constant increase in the volume of trade during the nine years when additional stores and departments were brought into the business must have been due in great part to causes which the attachment could not affect. To put upon the defendant the burden of identifying such causes, and showing to what the increase in remote years was due, was unreasonable. In the next place, the decrease in the volume of business after the attachment does not seem to be a natural and probable consequence of the excessive attachment, which had no natural tendency to drive away purchasers, as it was made on the 12th and dissolved on the 14th day of February, and which never closed the plaintiff's stores or stopped trade in them. The connection between the supposed cause and the result is not sufficiently close, and too many other elements enter into the matter; for example, the methods of business pursued before and after the attachment, the amount of advertising done, changes in clerks and other employees, the amount of pains and attention given to the business, and the state of trade in general. It is inconceivable that a prosperous business

was converted into an unprosperous one by the mere fact that an attachment which never closed the stores, and which was in force but two days, was for the amount of forty thousand dollars rather than for ten thousand. The diminution of business is not traceable to such a cause. In our opinion, so wide a range of evidence should not have been allowed. This makes it necessary to sustain the defendant's exceptions. Whether the price for which the plaintiff sold out will be admissible in another trial we do not decide. It was admissible when offered by the defendant, because, the whole course of the business having been admitted in favor of the plaintiff, the final sale which summed up the transaction was relevant to the question whether the value of the business had been diminished.

There was also error in allowing the plaintiff to testify that the amount of the attachment was the cause of the pneumonia with which he was attacked upon the conclusion of a journey from New Jersey to Boston, made four days after the attachment had been dissolved. If that disease can be in any way shown to be a natural and probable consequence of the making of an excessive attachment of goods, a point upon which we express no opinion, it cannot be so shown by the testimony of one who has no special knowledge of the subject.

*Exceptions sustained.*