## J. L. LOCKHART v. SOLOMON BEAR.

*Action for Damages for Unlawful Arrest—Abuse of Legal Process—Pleading—Personal Property Exemption —Arrest and Bail.*

1. The personal property of a resident debtor to the value of $500 is exempt from any and all process for the collection or the enforcement of payment of debt, and such right to the exemption exists, not by virtue of the allotment, but by virtue of the Constitution which confers it and attaches the protection to the debtor before the allotment or appraisal.

2. Where, in an action for abuse of legal process by the defendant in causing the arrest of the plaintiff for the purpose of compelling him to pay defendant's claim, out of property exempt from execution, the complaint alleged that defendant's affidavit, on which the warrant of arrest was issued, stated that plaintiff was about to "remove" himself from the State; *Held*, that it sufficiently appeared from the complaint that plaintiff was a resident of the State at the time the warrant of arrest was issued.

3. Admissions in an answer of a fact necessary to be stated in the complaint will be considered, for jurisdictional purposes, in aid of the complaint which does not state such fact directly, but only by implication; hence, where it was necessary to state in the complaint in an action that the plaintiff was, at the time of his arrest, a resident of the State and entitled to his personal property exemption, a statement in the answer that defendant sent a person to the place, within the State, where plaintiff did business, and where he lived, supplied the omission of the direct statement in the complaint of the fact of residence.

4. The arrest of a debtor, in arrest and bail proceedings, to compel the payment of a debt out of property exempt from execution, is an abuse of legal process, which renders the creditor liable to the debtor in an action for damages.

LOCKHART *v.* BEAR.

5. An action for damages for the abuse of legal process may be maintained before the action in which such process was issued is terminated.

CIVIL ACTION for malicious abuse of process, in which plaintiff sued for damages, compensatory and punitive, tried before *Hoke, J.*, at January Term, 1895, of NEW HANOVER Superior Court. The defendant answered, but at the trial demurred *ore tenus* upon the ground that the complaint did not state a cause of action. The demurrer was sustained, and plaintiff appealed.

*Mr. Thomas W. Strange*, for plaintiff (appellant).
*Messrs. Shepherd & Busbee*, for defendant.

FURCHES, J. : The plaintiff brings this action and files the following complaint :

"1st. That on or about the 1st day of June, 1893, the defendant, Solomon Bear, with the purpose and intent of extorting from the plaintiff an order upon one J. M. Wright for the payment to him of the sum of two hundred and sixty-four and 85-100 dollars, claimed by him to be due and owing to him by plaintiff, but which plaintiff denied, out of the proceeds of an insurance policy assigned by plaintiff to the said Wright, threatened the plaintiff with arrest and imprisonment unless he gave him said order, and upon his refusing to do so made an affidavit in which he falsely alleged that plaintiff was about to remove himself and property from this State with intent to defraud his creditors and sued out writ of arrest and bail for the alleged purpose of detaining the plaintiff in this State to answer such a judgment which he the defendant might obtain in a suit then instituted by him to recover the alleged debt before stated, and which as aforesaid was denied ; and upon said writ he had the defendant arrested, deprived of his liberty

and incarcerated in the common jail of New Hanover County for the period of six days and nights.

"2nd. That at the time the defendant made said affidavit and sued out said writ he well knew that plaintiff was insolvent and that he could not collect this debt even if it existed or any other debt by a judgment against him and by detaining him here for that alleged purpose, and that the only way he could collect the said disputed debt was by forcing this plaintiff through fear of arrest to give the said order which plaintiff had refused to do; and plaintiff alleges and so charges that the defendant sued out said writ and *used* it not for the purpose set forth therein or commanded by the exigency of the writ, but for the illegal and malicious purpose of compelling him, the plaintiff, as aforesaid through the fear of imprisonment either to pay the amount of a disputed debt to him in cash or to give him the said order upon the said J. M. Wright. And the plaintiff charges that by so doing he perpetrated a fraud upon the court, and abused its process to the discredit of the court and the law, and to the great wrong and injury of the plaintiff.

"3rd. That the plaintiff was arrested at night and when taken to the jail found there awaiting him the defendant Bear who told him that if he would give the said order to him he would have him released, but otherwise he must be locked up for the night. And upon plaintiff's refusing to do this, the defendant directed the sheriff to proceed and the plaintiff was locked up in a common cell used to imprison criminals and other violators of the law.

"4th. That instead of ordering said arrest in the day time when plaintiff might have sought for some one to bail him and prevent his going to jail, the defendant waited to order the arrest until late at night when he knew plaintiff, being a stranger, could not procure a bond and would therefore

be compelled either to comply with his demand or spend the night in a felon's cell.  And plaintiff alleges that he could not procure any bail that night nor until the expiration of six days and nights thereafter, being a comparative stranger in the city of Wilmington, and having few friends there; and that for the space of six days and nights he was compelled to endure the pain, mortification and mental anguish of the disgrace of imprisonment in a common jail and the deprivation of his liberty.

Wherefore, plaintiff demands judgment against the defendant,

*First.* For five thousand dollars damages for the wrong and injury done to him by defendant's illegal and nefarious acts.

*Second.* For five thousand dollars punitive damages for his violation and abuse of the law.

*Third.* For the costs of this suit.

(Verification in New York.)

The defendant demurred *ore tenus.*  The court below sustained the demurrer upon the ground that it did not state a cause of action, and plaintiff appealed.  In this ruling there is error.

The demurrer admits the allegations of the complaint to be true.  And it was admitted by defendant's counsel on the argument that the money in Wright's hands was all that defendant knew of plaintiff's having, and that this sum was less than $500.  Article 1, Sec. 16, of the Constitution of the State, declares, "There shall be no imprisonment for debt in this State, except in cases of fraud." Article X, Section 1, declares, "The personal property of any resident of this State to the value of $500 shall be and is hereby exempted from sale under execution or other final process of any court issued for the collection of any debt."  The words "personal property" shall include monies, goods, chattels, choses in action, and evidences of

LOCKHART *v.* BEAR.

debt, including all things capable of ownership_____ The word 'property' shall include all property. both real and personal." *Code*, Ch. 59, Sec. 3765, sub-Sec. 6. And, though it is not as distinctly stated as it might have been, we think it sufficiently appears from the complaint that plaintiff was a resident of the State at the time the warrant was sued out and plaintiff arrested. It states that defendant's affidavit alleged "that plaintiff was about to remove himself and property from the State." This, we think, clearly implies that plaintiff was a resident of the State. The term, "remove himself from the State," would have been improperly used had he not been at that time a resident.

Besides, the admissions in defendant's answer should have been considered for jurisdictional purposes in aid of plaintiff's complaint. *Wilson* v. *Sykes*, 84 N. C., 215; *Johnson* v. *Finch*, 93 N. C., 205; *Puffer* v. *Lucas*, 101 N. C., 281. And the answer states, "that on one occasion one of the parties (that defendant sent to collect his debt) went to the store where the plaintiff did business and where he lived. So, if there was any doubt left in the statement of the complaint as to the plaintiff's being a resident of the State at the time of the warrant and arrest, we think that is supplied by the defendant's answer.

Whatever conflicts there may appear to be in the opinions of this Court as to when the homestead exemption commences, what is an abandonment, and when it terminates, can have no influence on this question. They are as to the homestead, real estate.

But as to personal property, under Article X, Section 1, of the Constitution, $500 worth is absolutely free from any and all process for the collection or the enforcement of payment of debt. The creditor has no lien upon this amount of his debtor's personal property; nor can he have

unless it is created by the debtor himself. There is no judgment lien that attaches ; there is no lien by execution until levy, and there can be no levy on this. So, it is absolutely free from all process for debt.

It may be claimed, and is claimed, that plaintiff was not entitled to this protection until it is laid off and allotted and assigned to him. We do not think so. It is not the allotment of the appraisers that gives the debtor this protection, but the vigor and force of the Constitution. And if it should be levied before, the debtor is still entitled to have it laid off and assigned to him.

This doctrine may not apply in matters of attachment, where it is alleged the defendant has left the State, and lost his right of protection, for the reason that it is personal, attaches to and follows the person wherever he may wish to take it and he may dispose of it as he pleases free from any and all claims of creditors.

But we are now considering and treating the case before us, and not what may be exceptions. And as it is admitted this insurance money in the hands of Wright, amounting to less than $500, was all that plaintiff had, so far as defendant Bear knew, it is manifest that an assignment would have been a vain and useless thing, as there was less than $500, and one that the law would not require, as it never requires vain and useless things to be done.

Then it is manifest from the allegations of the complaint that the defendant was trying to force the plaintiff by means of the extraordinary process of the court and the fear of imprisonment to compel the plaintiff to pay him out of, or give him an order upon, a fund which the Constitution has declared shall be free from the exigencies of all process and for the debt of Solomon Bear or any one else.

This being so, we must declare that the complaint aided by the answer states a cause of action which should have

LOCKHART *v.* BEAR.

been tried by a jury. *Sneeden* v. *Harris*, 109 N. C., 349; *Hewit* v. *Wooten*, 7 Jones, 182; *Grainger* v. *Hill*, 33 Eng. Com. Law Rep., 333; *Myer* v. *Walter*, 64 Pa. St., 283; 2 Greenleaf Ev., p. 752; *Wood* v. *Graves*, 44 Mass., 365, 59 American Reports, 95. Our judgment in this case we think is fully sustained in *Sneeden* v. *Harris*, and *Hewit* v. *Wooten*, in our own Reports. But the leading case on this subject, in which it is probably more fully discussed than any other, is *Grainger* v. *Hill*, *supra*. In that case TINDALL, C. J., said: "The complaint being that the process of the law has been abused to effect an object not within the scope of the process, it is immaterial whether the suit which that process commenced has been determined or not, or whether or not it was founded upon reasonable and probable cause."

Defendant contended that this action was like an action for false imprisonment, could not be maintained until the action under which plaintiff was arrested had ended. But the case of *Grainger* v. *Hill* is authority for saying it was not necessary to the action that the action of *Bear* v. *Lockhart* should have ended.

Justice SHARSWOOD, in *Myer* v. *Walter*, 64 Pa. St., 283, discussing this question says "An abuse of process is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it."

Mr. GREENLEAF (Vol. 2, p. 752) uses the following language: "But the action is for abusing the process of law, in order illegally to compel a party to do a collateral act, such as to give up his property, it is not necessary to aver and prove that the process improperly employed is at an end, nor that it was sued out without reasonable or probable cause."

BATTLE, J., for the Court, in *Hewit* v. *Wooten*, 7 Jones,

LOCKHART *v.* BEAR.

182, says: "If it appears that the present defendant sued out the writ mentioned in the bill of exceptions against the present plaintiff for the purpose of extorting money from him by reason of his arrest, then the case would be within the principle sanctioned by the Court of Common Pleas in *Grainger* v. *Hill, supra.*'

In *Wood* v. *Graves,* 144 Mass., 365; 59 Am. Reports, 95, the Court uses the following language: "There is no doubt an action lies for the malicious abuse of lawful process, civil or criminal_____Perhaps the most frequent form of such abuse is by working upon the fears of the person under arrest, for the purpose of extorting money or other property or compelling him to sign some paper, to give up some claim or to do some other act in accordance with the wishes of those who have control of the prosecution."

Therefore, after ascertaining the fact that defendant Bear had no right, by any process of law, to have the funds in the hands of Wright appropriated to the payment of his debt, we are of the opinion that the authorities cited clearly show that plaintiff has a cause of action that should be submitted to a jury under proper instructions from the court as to the law arising upon the pleadings and evidence. We have gone somewhat out of our usual course, in writing opinions, of simply citing the case we rely upon, and have in this case quoted them at some length. But we do this as we regard it as an important question and as it was ably and earnestly argued on both sides. There is error and the non-suit should be set aside and the case restored to the docket for trial.                    Error.

CLARK, J. (dissenting): If the action brought by defendant against Lockhart, and the ancillary remedy of arrest and bail obtained therein, were not prosecuted *bona fide*

117—20

but were instituted fictitiously, for purposes of oppression or malice, Lockhart would be entitled to an action for malicious prosecution, but only after the first action had terminated adversely to Bear. To permit Lockhart to bring an action for malicious prosecution while Bear's action is still pending against him would be to try "an action within an action," for while the merits of the action of *Bear* v. *Lockhart* is still pending, Lockhart could not get along in an action against Bear for malicious prosecution without trying the very issues to be determined in the first action. But it is claimed that this can be maintained as an action for "abuse of process" while the former action of *Bear* v. *Lockhart* is still pending. If so, the cause of action must be something outside of the matters to be determined in *Bear* v. *Lockhart*, and not dependent upon the merits in that case. In other words, it must be admitted, for the purposes of this action, that Bear's action against Lockhart is properly brought and that whatever has been done within the scope of that action was rightly done, otherwise, the same question, the merits of Bear's action against Lockhart, would be pending in both cases, at the same time.

Now, it is within the scope of Bear's action against Lockhart to allege Lockhart's indebtedness and upon proper affidavit hold him in arrest and bail. This was all Bear did. That he offered, for a consideration, to release Lockhart from the arrest and bail is not outside the scope of the action. If it turns out that the action was brought for purposes of extortion and malice, that can be enquired into by an action for malicious prosecution after the first action is terminated, but neither the suing out an order in arrest and bail, nor the offer to dismiss it upon paying or securing the debt, are outside the scope of the action. They are within its very purview and object. Nor did the

fact that the defendant was worth nothing above his exemption exempt him from liability to arrest and bail upon the same affidavit as would have made anyone else liable thereto. It was simply Lockhart's misfortune that he was unable to give bail. It would seriously limit the value and use of the ancillary remedy of arrest and bail, if a party, resorting to it in good faith in the cases justified by statute, should become liable whenever the party arrested is unable to give bond. The liability of the plaintiff in such cases depends upon the good faith in the action he is prosecuting and not upon the pecuniary ability of the defendant therein to give bail.

Neither *Sneeden* v. *Harris*, 109 N. C., 349, nor *Hewit* v. *Wooten*, 52 N. C., 182, nor the cases cited from other States, sustain the plaintiff's cause of action. In *Hewit* v. *Wooten*, it was held that an agreement that the sheriff might accept a sum of money in lieu of a bail bond, could not be considered in any other light than an action for malicious arrest or malicious prosecution which could not be brought till the first action was terminated. In *Sneeden* v. *Harris*, Harris maliciously sued out an order of arrest and bail against Sneeden for alleged slander of title, not for the purposes embraced in the scope of that action but that, while Sneeden was under arrest, Harris might get into possession of certain real estate held by Sneeden without resorting to an action of ejectment. And all the other cases, permitting an action to be brought for "abuse or process," show that the wrong complained for was something done outside of, and distinct from, the acts which could be done within the scope of the first action. But the wrong here complained of is that Bear sought by his action, which was not decided when this action begun, to collect a sum of money which Lockhart denied he owed, that Lockhart was insolvent and could not give bond, and therefore Bear

expected to force him to pay the debt and offered to release him upon securing part of the debt. This is all within the very scope and purport of the proceedings in arrest and bail. If the debtor is solvent, why resort to arrest and ·bail? It is when it is doubtful whether the judgment can be collected and upon the state of facts authorizing an arrest and bail that this process is resorted to. It must be remembered that if the arrest and bail was issued upon a state of facts justifying a judgment the defendant therein is not entitled to his homestead and personal property exemption against such judgment. *Fertilizer Co.* v. *Grubbs,* 114 N. C., 470; *State* v. *Williams,* 97 N. C., 414. If it turn out that it was resorted to maliciously and for purposes of extortion, then after the termination of the action in favor of the defendant therein (and not before) he can in turn become plaintiff in an action for malicious prosecution. But when every act alleged in the complaint, not the inferences argumentatively alleged therein, is done within the scope of the action, as in this case, an action for "malicious abuse of process" does not lie. The Judge below properly sustained the demurrer.

                                                    No Error.