**ITALIAN STAR LINE, Inc., v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION et al.**

No. 273.

Circuit Court of Appeals, Second Circuit.

Aug. 25, 1931.

Vincent T. Follmar, of New York City, for appellant.

George Z. Medalie, U. S. Atty., of New York City (William E. Collins and Frederick H. Cunningham, Special Assts. to U. S. Atty., both of New York City, of counsel), for appellees.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

It is urged by the appellant that under the doctrine of Slocum v. New York Life

Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, the trial court had no power to dismiss the complaint after the jury had returned a verdict for the plaintiff; that the most which could be done was to set aside the verdict and declare a new trial. The procedure complained of would clearly be authorized in the state courts. Bail v. N. Y., N. H. & H. R. R. Co., 201 N. Y. 355, 94 N. E. 863; Fitzgerald v. Colt-Stewart Motor Co., 231 App. Div. 176, 246 N. Y. S. 535; New York Civil Practice Act, § 459. Under the Conformity Act (Rev. St. § 914 [28 US CA § 724]), this practice was properly followed by the District Court. A motion to dismiss the complaint for lack of proof had been seasonably made at the close of the plaintiff's case and again at the close of all the evidence, and decision thereon had been reserved, with the consent of the parties, until after verdict. The propriety of setting aside the verdict and passing upon the motion under such circumstances has been recognized by this court in Royal Card & Paper Co. v. Dresdner Bank, 27 F.(2d) 791. The Slocum Case has no application to such a situation. There is no violation of the right to trial by jury in dismissing a complaint for failure to establish a cause of action. Bohenik v. Delaware & Hudson Co., 49 F.(2d) 722 (C. C. A. 2).

We pass, therefore, to a consideration of whether the evidence was such as to require any issue to be left to the jury. Although the record is voluminous, the essential facts may be stated in relatively small compass. The plaintiff was incorporated in 1919 to operate a steamship line. Early in 1920, E. Paul Yasselli became its president. Negotiations were begun with the United States Shipping Board for the purchase of a vessel, and on April 26, 1920, a formal contract was executed between the plaintiff and the United States acting by and through the Shipping Board and the Emergency Fleet Corporation. The contract was in the form of a charter party of hire with an option to purchase. The monthly hire was to be applied upon the purchase price in the event that the option was exercised. After making three monthly payments, Yasselli applied for an extension of time and for a modification of the plan of purchase and a reduction in price. He was informed by officials of the Shipping Board that his requests would be granted, but no new contract was ever executed. In the meantime the New York office of the Shipping Board continued to bill the plaintiff for unpaid charter hire.

On October 18, 1920, a bill for $114,000 was rendered. This was apparently upon the basis of the proposed new plan of purchase but not at the reduced price desired by the plaintiff. Yasselli interviewed Conrad and was told by the latter that a receiver would have to be appointed unless the $114,000 was paid. In later interviews he was told that a receiver must be appointed in order to get access to plaintiff's records because Yasselli and others were to be criminally prosecuted for supposed illegal practices in connection with securing the charter purchase contract. Goff was appointed a special assistant to the Attorney General to conduct such prosecution. On December 6, 1920, a receiver was appointed by the District Court for the Southern District of New York upon a bill of complaint brought by the United States and the company's answer thereto, by its attorney, admitting the allegations of the bill and joining in the prayer for the appointment of a receiver. Carson, the brother-in-law of Conrad, was appointed attorney for the receiver. The receiver took possession of the plaintiff's books and papers and also of certain personal papers of Yasselli. In February, 1921, a criminal indictment was obtained against the plaintiff, Yasselli, and others, upon the trial of which the defendants obtained a directed verdict. In the receivership proceedings the Italian Star Line applied for leave to withdraw its answer and deny the allegations of the complaint, urging that its original answer had been obtained by threats and duress. This application was denied, as was also a motion to discharge the receiver on the ground that his appointment had been fraudulently obtained. The assets of the plaintiff were liquidated under court order, and distribution was made to creditors. Nothing remained for the corporation. The receiver was discharged in March, 1923.

The present suit was begun in June, 1924. The theory of the action is that Goff and Conrad, acting on behalf of the Emergency Fleet Corporation, devised and carried out the plan of causing a receiver to be appointed for the plaintiff, with the ulterior motives of obtaining access to its records to aid in the proposed criminal prosecution of the plaintiff and its officers, and of creating legal business for Carson by having him employed as the receiver's attorney; that as a result of the receivership plaintiff lost all its assets, which were of an alleged value of $422,000 at the date of the receivership. This sum, with interest from December 6, 1920, was demanded as damages.

It may be noted at the outset that the plaintiff does not attempt to recover on a theory of malicious prosecution, either with respect to the unsuccessfully prosecuted criminal proceeding, or with respect to the civil proceeding for a receiver. Not only does the complaint fail to allege necessary elements for such an action, but the New York statute of limitations applicable to malicious prosecution was set up in the defendant's answer and would apparently be a complete defense. See New York Civil Practice Act, § 50. The plaintiff's contention is that an action for abuse of process was alleged and proved.

It has been observed by the courts on several occasions that the elements vital to an action for abuse of process are not clearly defined, either by the cases or by writers on the subject. See Lambert v. Breton, 127 Me. 510, 144 A. 864, 866; Rock v. Abrashin, 154 Wash. 51, 280 P. 740, 741, 65 A. L. R. 1280. The reason apparently is that the term has been used as a label for a variety of dissimilar situations which have in common only the fact that actionable injury was inflicted in connection with the use of judicial process and under circumstances such that the narrowly circumscribed action of malicious prosecution was inapplicable. Thus the term has been applied to cases of excessive execution on a judgment, Churchill v. Siggers, 3 El. & Bl. 929; Barnett v. Reed, 51 Pa. 190, 88 Am. Dec. 574; attachment for greatly excessive amount, Zinn v. Rice, 154 Mass. 1, 27 N. E. 772, 12 L. R. A. 288; Id., 161 Mass. 571, 37 N. E. 747; Moody v. Deutsch, 85 Mo. 237; Black v. Spears, 209 Mich. 1, 176 N. W. 469; unnecessarily oppressive conduct in connection with the arrest of person or property, Baldwin v. Weed, 17 Wend. (N. Y.) 224; Rogers v. Brewster, 5 Johns. (N. Y.) 125; Wood v. Graves, 144 Mass. 365, 366, 11 N. E. 567, 59 Am. Rep. 95; Bradshaw v. Frazier, 113 Iowa, 579, 85 N. W. 752, 55 L. R. A. 258, 86 Am. St. Rep. 394; and extortion of property by threat of criminal prosecution, Grainger v. Hill, 4 Bing. N. C. 212; Foy v. Barry, 87 App. Div. 291, 84 N. Y. S. 335; McClenny v. Inverarity, 80 Kan. 569, 103 P. 82, 24 L. R. A. (N. S.) 301; Lockhart v. Bear, 117 N. C. 298, 23 S. E. 484; Marlatte v. Weickgenant, 147 Mich. 266, 110 N. W. 1061. See, also, Blair v. Maxbass Security Bank, 44 N. D. 12, 176 N. W. 98; Brantley v. Rhodes-Haverty Furniture Co., 131 Ga. 276, 62 S. E. 222; Kool v. Lee, 43 Utah, 394, 134 P. 906; cf. Lambert v. Breton, 127 Me. 510, 144 A. 864; Bigelow, Torts (8th Ed.) 232; Cooley, Torts (3d Ed.) 355. In discussing the action of malicious abuse of process, Cooley asserts that two elements must exist: First, an ulterior purpose; and, second, "an act in the use of the process not proper in the regular prosecution of the proceeding." In addition there must be damage to the plaintiff from such irregular act. Bigelow, supra.

We shall assume that the evidence would justify the jury in finding an ulterior purpose on the part of Goff and Conrad in instigating the receivership proceeding in the name of the United States, namely, the purpose to get access to the records of the company and its president, for use in the contemplated criminal prosecution. We may also assume, without decision, that the acts and motives of Goff and Conrad should be imputed to the Emergency Fleet Corporation. But an improper motive alone is not enough to make the institution of the receivership proceeding an abuse of process. Whatever the motive, the obtaining of the appointment of the receiver was entirely regular. The plaintiff was indebted to the United States, and its attorney consented to the proceeding. The validity of his consent has been adjudicated in that proceeding and cannot be collaterally attacked. To make out its case, the plaintiff must prove irregular steps taken under cover of the process after its issuance, and damage to the plaintiff resulting therefrom. Assets Collecting Co. v. Myers, 167 App. Div. 133, 152 N. Y. S. 930, affirmed 225 N. Y. 631, 121 N. E. 854; Spear v. Pendill, 164 Mich. 620, 130 N. W. 343; Just v. Martin Bros. Co., 37 S. D. 470, 159 N. W. 44, 46; Bonney v. King, 201 Ill. 47, 66 N. E. 377; and see Schaefer v. O. K. Tool Co., 110 Conn. 528, 148 A. 330, 332; Whitten v. Bennett, 86 F. 405, 406 (C. C. A. 2).

The only irregular steps in the conduct of the receivership for which the defendant might be held are the seizure of the records of the company and of Yasselli, and the inspection of them by Conrad and Goff. The seizure of Yasselli's private papers may be assumed to have been illegal, but certainly the plaintiff cannot claim any injury to itself from this conduct. There is no suggestion that they contained anything detrimental to the plaintiff.

The evidence that Conrad and Goff inspected the records of the company after the receivership for use in the criminal prosecution is meager, but, assuming they did, the question remains whether that is

the kind of irregular activity in the use of judicial process that will support the cause of action. It has been said that action will lie only where the steps taken under the process compelled the plaintiff to do something which he could not be legally compelled to do. Johnson v. Reed, 136 Mass. 421, 423; Lyons v. Scriber (Sup.) 174 N. Y. S. 332, 334. Possibly that statement is too narrow; we need not say. However that may be, the acts alleged to constitute the abuse or perversion of the process must result in damage. Cf. Silverman v. Ufa Eastern Division Distribution, Inc., 135 Misc. Rep. 814, 236 N. Y. S. 18; Garland v. Wilson, 289 Pa. 272, 137 A. 266. The inspection of the books of the company while in the hands of the receiver was not shown to have caused any damage to the company. We therefore agree with the trial court that no cause of action was proved.

Error is assigned to the exclusion of certain evidence tendered by the plaintiff. The errors, if any, were immaterial, since the evidence rejected simply supported the contention of ulterior motive, which we have already assumed in the plaintiff's favor.

Judgment affirmed.