[Civ. No. 1718. Fifth Dist. Mar. 29, 1974.]

MILTON M. YOUNGER, Cross-complainant and Appellant, v.
GABRIEL W. SOLOMON, Cross-defendant and Respondent.

**COUNSEL**

Milton M. Younger, in pro. per., and Chain, Younger, Cooney, Jameson & Lemucchi for Cross-complainant and Appellant.

Gabriel W. Solomon, in pro. per., and Sims & Solomon for Cross-defendant and Respondent.

**OPINION**

**FRANSON, J.** — Appellant and respondent are attorneys separately engaged in the practice of law in Kern County. On April 1, 1971, the respondent and nine other Kern County attorneys filed a complaint with the State Bar of California, alleging that appellant was guilty of professional misconduct in that he had organized a county-wide network of ambulance-chasers and cappers who, under his direction and on his behalf, solicited professional employment from victims of personal injury accidents and other types of cases.[1] The letter described six different incidents of alleged

---

[1]The complaint is in letter form and is five pages long, including the signature page. It is addressed to Mr. Forrest A. Plant, President, The State Bar of California, 601 McAllister Street, San Francisco, California. The first two paragraphs are as follows: "This letter constitutes a formal complaint charging gross, continuous and intentional professional misconduct by the law firm of Chain & Younger of Bakersfield and each individual partner or associate thereof.

"The complaint is directed, through you, to the Board of Governors rather than Local Committee No. 2 for two reasons: two of the three committee members are signers of this letter and thus complainants herein; more importantly, we feel that although the specific incidents herein described are sufficient in and of themselves,

unlawful solicitation and listed the names of the parties, the date thereof and a general description of the alleged activities of the appellant and his agents in each of the cases. The letter stated on information and belief that the specific examples of solicitation by appellant were but "the tip of the iceberg" and that there were other attorneys in Kern County who were "fully aware of other relevant cases of ambulance-chasing by [appellant] . . . and that said other attorneys [were] reluctant to step forward, but . . . [would] gladly and truthfully supply official investigators of the State Bar Association with the relevant facts." The letter concluded by requesting appropriate disciplinary action and was signed by respondent and the nine other attorneys.

On April 5, 1971, respondent, on behalf of Evelyn Jenkins who is listed in the letter to the State Bar as a victim in one of the described accidents, filed an action for damages against the appellant for "intentional infliction of emotional distress." In her complaint, Mrs. Jenkins sought compensatory and punitive damages arising out of appellant's allegedly fraudulent acts in soliciting her personal injury suit and his wrongful interference in the settlement negotiations which she had been conducting with an insurance company. As a basis for an award of punitive damages paragraph 19 of her complaint alleges that the appellant's wrongful conduct was part of an overall scheme of ambulance-chasing and misrepresentations which appellant had adopted and implemented over the years as a standard operating procedure in his law practice; that as a consequence he had accumulated substantial income and extensive property holdings and an assessment of substantial exemplary damages would be "proper and mandatory if said defendant and his cohorts [were] to be deterred from continuing said outrageous and shameful conduct in the future."[2]

On April 22, 1971, the respondent prepared and filed a set of 92 interrogatories in Mrs. Jenkins' action against appellant. Interrogatory No. 86 reads as follows:

"Attached hereto is a copy of a complaint dated April 1, 1971, signed by ten members of the Kern County Bar Association and filed against you and your firm with the State Bar Association which charges you generally

---

they represent mere examples of a well-established pattern of professional misconduct which is of huge magnitude."

The letter goes on to describe six particular acts of appellant which are alleged to constitute a violation of the Rules of Professional Conduct.

[2]A cause of action for punitive damages based on repetitious and outrageous conduct of a defendant and for the purpose of punishing and deterring him and others from such conduct in the future is well recognized. (See Civ. Code, § 3294; 2 Witkin, Summary of Cal. Law (1960) Torts, § 394, pp. 1597-1598.)

and specifically with ambulance chasing of the same type and character as is alleged against by Plaintiff's complaint herein. With respect to said Bar Association complaint of 'ambulance chasing' set forth in detail:

"(a) Your response thereto.

"(b) All facts relevant to accusations stated therein which you have not stated above.

"(c) The name, address and telephone number of each and every person whom you believe can give any testimony that would tend to refute and/or corroborate any of the general and/or specific accusations of ambulance chasing contained therein.

"(d) The chronological history of all contacts you and/or any member, employee, agent and/or friend of your firm had with Johnny Wheat in 1968 and Joseph Jukich in 1969 and/or any relative or spouse of Johnny Wheat and/or Joseph Jukich." As stated in the interrogatory a copy of the letter to the State Bar was attached.[3]

On December 3, 1971, the appellant filed a first amended cross-complaint against respondent for abuse of process, seeking compensatory and punitive damages. The cross-complaint forms the basis of this appeal and can be thusly summarized: Appellant alleges that the respondent persuaded Mrs. Jenkins to file her suit against appellant to enable him (the respondent) to use the interrogatory to make public the letter to the State Bar. Appellant alleges that respondent's copy of the letter is a confidential record of the State Bar by virtue of the provisions of State Bar rule 8;[4] that respondent's publication of the letter resulted from a use of the discovery process for a purpose other than that for which it was designed; and that respondent had as his ulterior purpose the intimidation of and injury to appellant and his elimination as a competitor in the practice of the law.

On December 7, 1971, the respondent, without demurring or answer-

---

[3] On June 10, 1971, the appellant filed his answer to the interrogatories. He refused, however, to answer No. 86 on the grounds that it was not relevant to the subject matter of the lawsuit, did not lead to discoverable evidence and was oppressive and burdensome. On June 21, the respondent filed a motion to compel answers to interrogatory No. 86 and for imposition of sanctions; the motion was granted and the appellant was fined $50. The interrogatory has never been answered.

[4] Rule 8 of the State Bar Rules (West's Bus. & Prof. Code, following § 6087) provides in pertinent part: "The preliminary investigation [of an attorney] shall not be public . . . . The files and records of all preliminary investigations and formal proceedings are the property of the State Bar and are confidential and no information concerning them and the matters to which they relate shall be given to any person except upon prior order of the board of governors or as in these rules provided."

ing the cross-complaint, moved for summary judgment. In his declaration in support of the motion he denies that he had persuaded Mrs. Jenkins to file the lawsuit against appellant and states that Mrs. Jenkins requested him to file the action after he advised her of her legal rights in connection with her personal injury claim and the contingent fee contract which she had signed with appellant. Respondent states that the complaint to the State Bar refers precisely to the same charges of ambulance-chasing against appellant as are made in Mrs. Jenkins' suit and that his motive in joining with other members of the Kern County Bar in charging appellant with ambulance-chasing and his motive in acting as counsel for Mrs. Jenkins "were and are closely interrelated and intertwined." Respondent then declares: "I admit without the slightest hesitation that my purpose in lodging with the State Bar the charges of ambulance-chasing against [appellant] was and is that of bringing about an end to what he refers to as his role as 'professional competitor' and which I refer to as his roles as an 'unethical and unprofessional ambulance-chaser.' I admit, without the slightest hesitation, that I have stated and will continue to state that it is my firm belief that Mr. Younger's history of ambulance-chasing has been so flagrant and imbedded that he will not have been properly punished until and unless he has been disbarred from the practice of law . . . . I further admit . . . that *it is my intention through prosecution of the complaint herein against [appellant] to attempt to inflict a substantial monetary loss upon [appellant] by recovery of substantial compensatory and punitive damages.* I further admit . . . that I intend to share with and pass on to the State Bar any and all evidence of ambulance-chasing which I may develop against [appellant] through discovery proceedings in this case, because I am legally obligated to do so by State Bar Rule 19 . . . ."[5] (Italics added.)

No counterdeclaration was filed by appellant. On January 17, 1972, the trial court granted the motion for summary judgment and ordered the cross-complaint dismissed.

## DISCUSSION

In reviewing the summary judgment, our task is to determine if the facts contained in respondent's declaration considered in the light of the allegations of appellant's cross-complaint present a triable issue. (*Corwin* v. *Los*

---

[5]State Bar rule 19, contained in (West's) Business and Professions Code, following section 6087, provides in relevant part: "A complaining witness shall assist in the conduct of the preliminary investigation . . . and shall otherwise assist the committee . . . in securing evidence in support of the charges made."

*Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].)[6] For the reasons hereafter stated, we hold that a factual question is presented as to whether respondent abused the process of the court. We also hold as a matter of law that appellant's conduct was not within the privilege accorded an attorney by Civil Code section 47, subdivision 2.

■  The term "process" as used in the tort of abuse of process has been broadly interpreted to encompass the entire range of procedures incident to litigation. (*Barquis* v. *Merchants Collection Assn.,* 7 Cal.3d 94, 104, fn. 4 [101 Cal.Rptr. 745, 496 P.2d 817].) *Barquis* explains the rule in this manner: ". . . [I]n *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 94-95 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152], the court recognized that while 'the giving of a notice that a deposition will be taken is not "process" in the strictest sense of the word . . . in a proper case [the] abuse of the powers which a litigant derives from the taking of a deposition on proper notice gives such notice the status of "process" for the purpose of the tort [of abuse of process].' Similarly, in *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611, 613 [17 Cal.Rptr. 919], the court, while finding no abuse in the case before it, recognized that under certain circumstances, the *taking of an appeal* could give rise to an abuse of process. "(See also *Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522 [178 P.2d 65] (eviction under false pretense constituted abuse of process)). Other jurisdictions have recognized the propriety of an abuse of process action when a plaintiff has intentionally misfiled an action for an improper purpose. (See *Bond* v. *Chapin* (1844) 49 Mass. (8 Met.) 31.) This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution. (See *Italian Star Line* v. *United States Shipping Board E. F. Corp.* (2d Cir. 1931) 53 F.2d 359, 361 [80 A.L.R. 576].)" Written interrogatories which are specifically authorized by Code of Civil Procedure section 2030, and in this case enforced with sanctions by the trial court, clearly come within the range of

---

[6]Respondent contends for the first time on appeal that the cross-complaint against him as an attorney in the main action is not proper because it did not arise out of the "same transaction" as required by then section 442 of the Code of Civil Procedure. (Code Civ. Proc., § 442 has since been repealed and replaced by Code Civ. Proc., § 428.10.) Because respondent did not demur, move to strike or sever the cross-complaint or otherwise object in the *trial court* to the propriety of the cross-complaint, he is deemed to have *waived* the objection. (Code Civ. Proc., § 430.80 (formerly § 434).)

procedures incident to litigation; thus, the use of the interrogatory constituted the use of "process."

■ Was there an "abuse" of the process? The gist of the tort is the *misuse* of the power of the court: It is an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose. (*Spellens* v. *Spellens,* 49 Cal.2d 210, 231 [317 P.2d 613]; *Meadows* v. *Bakersfield S. & L. Assn.,* 250 Cal.App.2d 749, 753 [59 Cal.Rptr. 34]; 3 Rest., Torts, § 682, p. 464; Prosser, Law of Torts (3d ed.) pp. 876-878.) Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process is required. ■ And, generally, an action lies only where the process is used to obtain an unjustifiable *collateral advantage.* For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort. (*Golden* v. *Dungan,* 20 Cal.App.3d 295, 301-302 [97 Cal.Rptr. 577]; *Templeton Feed & Grain* v. *Ralston Purina Co.,* 69 Cal.2d 461, 466 [72 Cal.Rptr. 344, 446 P.2d 152]; *Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 232.)

Code of Civil Procedure section 2016, subdivision (a), authorizes the taking of the testimony of a party to the action by written interrogatories for the purpose of discovery or for use as evidence *in the action.* Subdivision (b) defines the scope of examination and provides that unless otherwise ordered by the court (for the protection of the parties) the deponent may be examined regarding any matter not privileged as long as it is relevant to the subject matter of the pending action. This includes matters relating to the claim or defense of the examining party as well as the identity and location of persons having knowledge of relevant facts. The statute expressly provides that it is not grounds for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. In *Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 173 [84 Cal.Rptr. 718, 465 P.2d 854], the court said: ". . . [T]he relevance of the subject matter standard [in discovery] must be reasonably applied; in accordance with the liberal policies underlying the discovery procedures, doubts as to relevance should generally be resolved in favor of permitting discovery."

■ Appellant asserts that respondent's use of the interrogatory constituted an abuse of process because he was motivated by a "personal vendetta" with the aim of forcing appellant to leave Kern County, bringing about his disbarment and inflicting monetary punishment. Respondent counters by declaring that he viewed the appellant's general pattern of ambulance-chasing about which he complained to the State Bar as inter-

related and intertwined with his client's case and that the questions in interrogatory No. 86 were relevant to Mrs. Jenkins' claim for punitive damages. There is no question that insofar as interrogatory No. 86 was used for the purpose of discovering matters relating to appellant's defense to Mrs. Jenkins' charge of repeated acts of ambulance-chasing or to questions regarding the identity and locations of persons having knowledge of facts relating to the alleged acts of solicitation, it constituted proper use of the discovery process and cannot be characterized as an abuse of that process.

We are of the opinion, however, that respondent's declaration and interrogatory No. 86 suggest that he may have had an additional purpose in mind: the disclosure and publication of the *fact* that a complaint against appellant for professional misconduct had been filed with the State Bar by 10 Kern County attorneys. It may be inferred that this was done to damage appellant's reputation as a lawyer and thereby unfairly eliminate or impede his activities as a competitor in the practice of law. Such an inference is reasonable because, as an attorney, respondent could be expected to appreciate the serious impact which the publication of the charges of professional misconduct would have on appellant's relationship with clients, judges and other attorneys in Kern County. Respondent filed Mrs. Jenkins' action four days after the complaint was mailed to the State Bar; he filed interrogatory No. 86 some two weeks later. He could also be expected to be aware that by attaching the letter of complaint to interrogatory No. 86, the fact that appellant had been officially charged with misconduct would be made public long before the investigative procedures of the bar would permit a determination of the truth or falsity of the charges made against him. It is not our function in this review to judge respondent's true motive; however, we believe a question of fact arises as to whether he attempted through the improper use of the discovery process to disclose and publish material calculated to injure appellant's reputation and to expedite his demise as a practicing lawyer.

The discipline and punishment of an attorney for professional misconduct rests not with his fellow attorneys but with the State Bar and the Supreme Court. (Bus. & Prof. Code, § 6077.) The State Bar rule that the preliminary investigation of complaints against an attorney shall not be made public and that all records and proceedings of the board of governors are confidential unless disciplinary action is imposed, is for the benefit of the complainant as well as the accused attorney. A complainant, be he a lay person or an attorney, is entitled to have the fact that he has filed a complaint against an attorney kept confidential until such time as the charges are found to be true and disciplinary action is taken. (*Chronicle Pub. Co.* v. *Superior Court,* 54 Cal.2d 548, 569-572 [7 Cal.Rptr. 109,

354 P.2d 637].)[7] We decline to pass on appellant's contention that respondent's act of publishing the complaint to the State Bar was a violation of State Bar rule 8, and respondent's countercontention that he had a First Amendment right to publish the complaint at any time. A determination of these contentions is unnecessary inasmuch as the narrow issue before us is whether respondent utilized the process of the court for a purpose for which it was not intended and to obtain a collateral advantage.

■ Respondent contends that State Bar rule 19[8] imposed upon him an obligation to develop evidence against appellant through his client's case and that his act of attaching a copy of the letter of complaint to the interrogatory was nothing more than a good faith effort to gather evidence against appellant. His contention is not persuasive. On its face, rule 19 requires only that the complainant assist the State Bar in *its* investigation. It cannot be construed to require a complainant to conduct his own investigation by utilizing a process in a pending civil action to gather evidence against an accused attorney. Further, even if respondent was authorized to use the interrogatory to gather evidence against appellant, this would not justify the publication of the fact that charges were pending against appellant before the bar. Respondent's declaration of good faith, while unquestionably relevant to his motive in using the interrogatory in the manner that he did, cannot be deemed a complete defense as a matter of law to the charge that he used the interrogatory for an improper purpose. His declaration as to his state of mind, in light of the inferences to be drawn from the record, presents a question of fact.

Respondent has requested that we take judicial notice of the findings of the Disciplinary Board of the State Bar made some 20 months after the interrogatory was filed. We notice these facts but hold that they are not determinative of the issues before us. Without detailing the findings, we point out first that the board's findings and recommendation to the Supreme Court are advisory only and the court may adopt, modify or reject the findings and recommendations. (Bus. & Prof. Code, § 6082; *Dreyfus* v. *State Bar,* 54 Cal.2d 799 [8 Cal.Rptr. 469, 356 P.2d 213].) Second, we are not dealing with a case of defamation where the truth of the defamatory matter is a defense but rather with an action for abuse of process based upon the activity of an attorney who is alleged to have used a court process for a purpose for which it was not designed. The truth or falsity of the

---

[7]We question whether the other attorneys who signed the complaint against appellant anticipated that the respondent would make public the fact that they had filed charges prior to imposition of disciplinary action.

[8]See footnote 5, *infra.*

charges contained in the complaint to the State Bar is not a factor to be considered in making this determination.[9]

■ We turn now to the final question: Is respondent's conduct privileged under Civil Code section 47, subdivision 2? This statute protects attorneys as well as judges, jurors, witnesses and other court personnel from liability arising from publications made in the course of a judicial proceeding. The policy underlying the privilege is that of affording to our citizens utmost freedom of access to the courts. As a consequence, attorneys are given broad protection from the threat of litigation arising from the use of their best efforts on behalf of their clients. (*Albertson v. Raboff,* 46 Cal.2d 375, 380 [295 P.2d 405]; *Smith v. Hatch,* 271 Cal.App.2d 39 [76 Cal.Rptr. 350]; 3 Rest., Torts, § 586, com. (a).) The privilege is an absolute one because it protects publications made with actual malice or with intent to do harm. (*Albertson v. Raboff, supra,* at p. 379; *Rader v. Thrasher,* 22 Cal.App.3d 883, 887 [99 Cal.Rptr. 670].)

Although the application of this privilege usually arises in the context of a defamation action it is also applicable in other actions. (*Albertson v. Raboff, supra,* 46 Cal.2d 375 [slander of title based on recordation of a spurious lis pendens]; *Thornton v. Rhoden,* 245 Cal.App.2d 80, 94 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152] [abuse of process arising out of the giving of notice that a deposition would be taken]; *Pettitt v. Levy,* 28 Cal. App.3d 484 [104 Cal.Rptr. 650] [infliction of mental distress based on publication of false documents in connection with proceedings for a variance before a city council and planning commission]; *Kachig v. Boothe,* 22 Cal.App.3d 626 [99 Cal.Rptr. 393] [infliction of mental distress based on testimony given in a prior lawsuit]; *Agostini v. Strycula,* 231 Cal.App.2d 804 [42 Cal.Rptr. 314] [inducing breach of an employment contract based on perjured testimony given in a civil service proceeding].)

In *Thornton v. Rhoden, supra,* 245 Cal.App.2d 80, the court reasoned that a privilege which attached in a defamation suit should also apply where the same facts constitute the basis for an action for abuse of process. In

---

[9]The truth of the charges contained in the complaint are relevant, however, to the question of the actual damages suffered by appellant as the result of the claimed injury to his professional reputation for the period prior to January 12, 1973, when the report of the State Bar was published by filing with the Supreme Court. We also point out that respondent's good faith will be relevant to appellant's claim for punitive damages. If the trier of fact were to find that respondent acted in good faith in filing interrogatory No. 86 and without an intent to injure appellant, an award of punitive damages would not lie. (Civ. Code, § 3294; *Wolfsen v. Hathaway,* 32 Cal.2d 632, 647 [198 P.2d 1]; *Davis v. Hearst,* 160 Cal. 143, 162 [116 P. 530]; 2 Witkin, Summary of Cal. Law (1960) Torts, § 396, pp. 1599-1600.)

*Thornton* the court adopted the formulation of the privilege as set forth in section 586 of the Restatement of Torts: "An attorney . . . is absolutely privileged to publish false and defamatory matter of another in communications . . . during the course and as a part of a judicial proceeding in which he participates as counsel, *if it has some relation thereto.*" (Italics added.)

As explained in comment c to section 586 of the Restatement: "The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore, it is available only when the defamatory matter has some reference to the subject matter of the pending litigation, although it need not be strictly pertinent or relevant to any issue involved therein . . . ."

On this subject, the discussion by the court in *Bradley* v. *Hartford Acc. & Indem. Co.,* 30 Cal.App.3d 818, 824-825 [106 Cal.Rptr. 718], is informative: "Although defamatory publications made in the course of a judicial proceeding are absolutely privileged even if made with actual malice [Citations], the absolute privilege attaches only to a publication that has a reasonable relation to the action, is permitted by law *and,* more importantly, *if it is made to achieve the objects of the litigation.* If these requirements are met, the publication is absolutely privileged even though made outside the courtroom and no function of the court or its officers is invoked [Citations]. And although the cases stress that to be privileged under subdivision 2 of section 47 the defamatory matter need not be relevant, pertinent or material to any issue before the court, *it is an absolute necessity that the publication have some connection or logical relation to the judicial proceeding* [Citations] . . . . It follows, therefore, that absolute privilege in judicial proceedings is afforded only if the following conditions have been met: the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law."

In the case at bench, the complaint to the bar is based for the most part on six incidents of alleged unlawful solicitation of clients by appellant; insofar as these matters or any comments or questions in reference thereto are concerned, interrogatory No. 86 is clearly related to Mrs. Jenkins' punitive damage claim and is within the scope of the privilege. However, the interrogatory also discloses and publishes the fact that a complaint had been made by 10 attorneys to the State Bar calling for disciplinary proceedings against appellant. Publication of these matters has no logical relation or connection with Mrs. Jenkins' action and, in our opinion, no reasonable

person should doubt its impropriety. (See *Carpenter* v. *Ashley,* 148 Cal. 422 [83 P. 444]; *Friedman* v. *Knecht,* 248 Cal.App.2d 455, 460 [56 Cal. Rptr. 540]; *Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 93; Witkin, Summary of Cal. Law (1969 Supp.) Torts, § 117, pp. 592-594; Veeder, *Absolute Immunity in Defamation: Judicial Proceedings* (1909) 9 Colum. L.Rev. 463, 600, 612.) The terms "related to" or "connected with" necessarily require more than a remote relationship or common factual genesis between two otherwise unconnected subjects. To come within the privilege, the fact communicated itself must have some bearing on or connection with the subject matter of the litigation. That charges were pending against appellant before the State Bar had no such relation to Mrs. Jenkins' action.

The judgment is reversed.

Brown (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied April 17, 1974, and respondent's petition for a hearing by the Supreme Court was denied June 5, 1974.